## City of Winchester v. Kentucky Utilities Company.

(Decided November 22, 1918.)

### Appeal from Clark Circuit Court.

1. Municipal Corporations—Records.—A municipality can speak only by its records.
2. Injunction—Pleadings.—Upon a motion for a preliminary injunction a defendant is not required to file an answer to the merits of the case; he may proceed by affidavits without a pleading.
3. Corporations—Public Service Company—Discontinuance of Service—Injunction.—A public service company has a right to discontinue its service when the customer declines to pay therefor; but it may be enjoined from discontinuing its service on a failure of the customer to pay a bill which he, in good faith, and upon reasonable grounds, disputes.
4. Contracts—Municipal and Otherwise—Construction.—There is no difference between the contracts of a municipality and other contracts as to the canons of construction.
5. Equity—Remedy at Law.—Equity will not grant relief where the plaintiff has an ample remedy at law.
6. Municipal Corporations—Cancellation of Lighting Contract—Injunction.—Where a municipality cancelled its contract with a public lighting company, pursuant to a provision of the contract authorizing a cancellation, and the public service company discontinued its service, the municipality will not be granted a mandatory injunction requiring the public service company to specifically perform the contract.

M. M. LOGAN and J. M. STEVENSON for City of Winchester.

GORDON & LAURENT, BENTON & DAVIS and J. J. GREENLEAF, for Kentucky Utilities Co.

OPINION OF THE COURT BY JUDGE MILLER—Dissolving injunction.

Pursuant to a franchise then granted by the city of Winchester, it entered into a contract with Holbrook and Pickrell on October 12th, 1901, whereby Holbrook and

Pickrell agreed, for the prices therein named, to light the streets of the city for a period of twenty years. As a part of the consideration for the contract they further agreed to operate a street railway within the city, and to construct, maintain and operate, or cause to be constructed, maintained and operated, during the life of the contract, an ice plant of a daily capacity of twenty-five tons of ice, and to supply its citizens with ice at reasonable prices. The ninth clause of the contract reads as follows:

"It is further agreed that should second parties fail to comply with the provisions of this contract with reference to the construction, maintenance and operation of the aforesaid electric street railway and ice plant, or either of them, in good faith, as provided for under this contract, and shall remain in such default for a period of three months, the first party shall have the right at its option to declare this contract null and void, and determine the same, upon sixty days' notice to said second parties."

With the consent of the city the contract was assigned to the defendant, the Kentucky Utilities Company, and it has been operating thereunder for the past seventeen years.

On August 16th, 1918, the city made a contract with W. H. Weiss whereby it employed Weiss as its lighting expert to make a study of the street lighting system in use in Winchester, agreeing to pay him as a compensation for his services a sum equivalent to fifty per cent of the total amount that the city would benefit or save, from a period of one year, as the result, or because of reduced or adjusted rates and charges, as compared with what the city was then paying. Under this employment Weiss reported to the city that for years the company had been lighting the city by means of a four hundred candlepower arc light instead of a twelve hundred candlepower arc light provided by the contract, and that by reason of this change in the light the city had been overcharged to the extent of $52,800.00. Accordingly, on August 22nd, 1918, the board of council adopted the following ordinance:

"It appearing to the board of council that the contract with the city for lights, ice plant and street railway made with A. A. Holbrook and James Pickrell, October 12th, 1901, which contract has been assigned to Kentucky

Utilities Company, has been violated by said utilities company for a period of more than three consecutive months last past, in that said utilities company has failed to operate the ice plant as set out in section 4 of said contract, and,

"Whereas, it appears in the ninth section of said contract that in the event of such failure the council has the right to declare the whole of same null and void and terminate same upon sixty days' notice;

"Now, therefore, be it ordained by the board of council of the city of Winchester, Ky., that said contract be and the same is hereby declared null and void and terminated.

"And the city clerk is hereby directed to deliver to the chief of police a certified copy of the foregoing ordinance and instruct said chief of police to deliver a copy thereof to the Kentucky Utilities Company. And the chief of police is directed to make due return by endorsing upon the back of a copy as to the manner and time which he served the same."

A certified copy of the ordinance was delivered to the Kentucky Utilities Company by the chief of police, pursuant to the directions of the ordinance

It will be observed that the action of the council was based upon the company's failure to operate the ice plant; nothing was said about the substitution of the smaller arc light for the larger arc light.

The monthly lighting bill of the company against the city amounted to about $900.00; but after the passage of the ordinance terminating the contract the city refused to pay the bills for August, September and October.

On October 15th, 1918, the company printed and sent to its customers in Winchester a statement of the local lighting situation in so far as it applied to street lighting, calling attention to the fact that the city had refused to pay its bills for August and September, and that it could not afford to furnish the service to the city unless it was paid therefor, giving the reasons for the position it had taken. The notice further recited the facts with relation to the ice plant, stating, among other things, that the plant could not be operated without being completely re-equipped, which it had refrained from doing in view of the war conditions, and in accordance with the expressed wishes of the federal government; that the company had,

however, imported ice from other cities and had sold it
to its customers in Winchester at less than cost; and it
closed with the statement that unless the city lighting
bills for August and September should be paid during the
month of October the company would be forced to discon-
tinue its street lighting service on November 1st.    The
street lighting bills for August, September and October
amounted to about $2,700.00 and were not paid; where-
upon the company discontinued that portion of its
service.

On November 7th the city filed this action against the
company asking that it be required, by mandatory injunc-
tion, to perform the contract by supplying electric cur-
rent for light and power necessary to light the streets of
the city of Winchester, and in other respects not neces-
sary to be now mentioned. A temporary injunction was
granted and upon a trial upon the petition and the affi-
davit of the president of the company and the exhibits
filed therewith, the circuit court granted the prayer of the
petition to the extent of ordering and enjoining the com-
pany to furnish electric energy for all of the arc lights
and street series lights in the city of Winchester "as
heretofore under the contract of October 12th, 1901, and
to maintain and operate said street light service until the
further orders of this court," upon the execution of the
bond usual in such cases, in the sum of $10,000.00.

The order of injunction contains these further pro-
visions:

"This injunction is conditioned upon the payment by
the plaintiff to the defendant on the first regular meeting
night of the Winchester city council in each month for
electrical energy furnished to the plaintiff during the pre-
ceding calendar month at the rate of four hundred
($400.00) dollars a month, beginning November the 7th,
1918.

"It is understood that the court in fixing this amount
to be paid for the month of November and subsequent
months has not taken into consideration, or considered
the reasonableness of the contract price under which the
defendant company is operating, and has not considered
any question concerning any suit which the city has
against the electric company for overcharge under said
contract, nor considered whether or not either party to
this litigation has breached the contract under which the

defendant company is operating. The fixing of said amount is understood to be without prejudice to either party in this, or any other litigation.''

On the same day—November 9th—the city instituted an action at law to recover from the company $52,800.00 overcharges, above referred to. This case is now before us upon a motion by the company to dissolve the injunction.

It will be observed that the city occupies the anomalous position of seeking to specifically enforce a contract which it has terminated pursuant to an express power given by the contract. It is true the petition alleges that the contract is still in full force and effect; but since a municipality can, in matters of this kind, speak only by its records, and its rights and obligations in this respect are to be determined by the official action of its council, this allegation of the petition must be treated as ineffectual for any purpose, under the proof. Spalding v. City of Lebanon, 156 Ky. 37, and the cases there cited.

It was suggested in the argument that as the defendant had not taken the position, by pleading or otherwise, that the action of the city had the effect to cancel the franchise, it could not rely upon the city's attempted cancellation of the contract in view of the city's allegation that the contract was still in force. We fail to see the force of this suggestion. The city is the plaintiff in this action and must show its right to the relief it asks. The company followed the practice prescribed by the Code in filing an affidavit as proof, although it might have filed an answer, had it desired to do so. But its failure to file an answer at this stage of the case did not prejudice it from a standpoint of pleading. The burden was still upon the city to make out its case.

It was further suggested in the argument, by counsel for the city, that the cancellation upon the part of the city was ineffectual, because the company could not be deprived of its rights under the contract without a trial and hearing, or an opportunity to be heard. We are not called upon to decide that question now. It is certain, however, that the city attempted to exercise the right given to it by the contract, and, so far as this record shows, it has manifested no disposition to rescind its action in that respect, even if it might be said that it could legally do so.

As above stated, we have the anomalous situation in which the city is avowedly claiming the right to annul the contract and to enforce it at the same time. Whatever may be the rights of the parties upon a trial of the question thus raised, equity will afford no injunctive relief to the party thus at fault.

A similar case was before the United States circuit court of appeals in Block v. City of Meridian, 169 Fed. 516, where Block and others sued the city of Meridian for wrongfully cancelling a franchise and contract for furnishing lights to the city. There, as here, the city passed an ordinance annulling the contract; and in passing upon the question as to whether the resolution showed a breach of contract, the court said:

"The declaration shows that, before the time for performance, the defendant, by formal resolution, renounced the contract. The determination of the defendant not to comply with the contract could not be more clearly shown than by a resolution 'that the negotiations . . . (referring to the contract) are hereby cancelled and annulled and held for naught.' It is true that one party to a contract cannot cancel it, but his attempted cancellation may show his renunciation of it—may show that he does not intend to abide by it or to perform his part of it. This clearly appears to have been the defendant's intention. This renunciation of the agreement having been made by the defendant, it seems well settled that the plaintiffs had the right to treat the contract as broken and ended, and to sue for its breach at once. The parties to an executory contract have a right to something more than its performance when the time for its performance arrives. They have a right to the maintenance of the contractual relation. It follows that the renunciation of the contract by one of the parties before the time of performance has come, entitles the other, if he chooses, to treat the contract as ended, and to sue at once for the breach. Clark on Contracts, sec. 270, p. 645; Lawson on Contracts, sec. 440. In Roehm v. Horst, 178 U. S. 1, 11, 20 Sup. Ct. 780, 44 L. Ed. 953, the cases are cited and approved which hold that if one party to an executory contract repudiates it before the time for performance arrives it is a breach and the other party may sue at once."

Furthermore, in City of Princeton v. Princeton E. P. & L. Co., 166 Ky. 730, where an electric company furnished light to the city without a valid contract, it was

held that the city was under no obligation to pay for the service. The court there, after a review of the authorities, reaffirmed the rule that the law does not imply any obligation or promise upon the part of a municipal corporation to pay on account of having received benefits.

Furthermore, the courts generally recognize the proposition that a public utility company has the right to discontinue its service when the customer declines to pay therefor. On the other hand, a water company or lighting company may be enjoined from discontinuing its service on a failure of the customer to pay a bill which he, in good faith and upon reasonable grounds, disputes. These principles were recognized in the late case of the Louisville Tobacco Warehouse Company v. Louisville Water Company, 162 Ky. 478, where the court said:

"It must be conceded, therefore, that a public water company may cut off its service for failure on the part of the consumer to pay the charges, that being a reasonable rule and regulation. Cox v. City of Cynthiana, 123 Ky. 363, 40 Cyc. 804."

But, before a customer can obtain injunctive relief in such a state of case, he must offer to pay the charges which he concedes to be justly due. If he seeks equity, he must do equity. As was said in Bell's Trustee v. City of Lexington, 120 Ky. 199, "he must come, not only with clean but with open hands." To the same effect see McDaniel v. Springfield Water Works Co., 48 Mo. App. 273.

It is no answer to the application of this legal principle in this case to say that the company owes the city money for overcharges, since that claim is not only disputed but is indefinite and unliquidated. And, since the city's monthly bill amounts to between $800.00 and $900.00 and the order of injunction requires the city to pay monthly the sum of only $400.00, it is plain that the order, to the extent of at least one-half of the monthly bill, undertakes to collect that much of the city's claim for overcharges, without a trial. And, in addition, no provision has been made for the August, September and October bills, amounting to $2,700.00. We know of no rule of law that would justify this procedure. The court cannot make a contract for the parties.

Furthermore, there is nothing in this case to justify the allegation of the petition that the city will suffer irreparable injury unless the injunction be granted, since the city had it entirely within its power to retain this

lighting service—and that is all that is covered by the injunction—by paying the monthly bills. Kentucky Independent Oil Co. v. Thiel, 168 Ky. 65; Mulroney v. Obear, 171 Mo. 613; Pomeroy's Eq. Jur., sec. 1407; Joyce on Injunctions, sec. 431, 445. There is no allegation that the company is insolvent, or that the city would be prejudiced in any way by prosecuting its ordinary action to recover the alleged overcharges.

The fact that the plaintiff is a municipal corporation, serving the public by securing a lighting service for it, does not change the rules governing the construction of contracts. A case, similar in principle to the one at bar, was before this court in Union L. H. & P. Co. v. Young, 146 Ky. 430, where certain citizens of the city of Dayton, acting on behalf of all the gas consumers and the city, sued a power company to compel it to supply them with artificial gas. In denying the relief asked, the court said:

"The court can not make a new contract for the parties. It can only enforce the contract they have made, and this it must do according to the fair and natural meaning of the terms used. In construing a contract, the court will look to the circumstances surrounding the parties when it was made and will read the contract in the light of these circumstances. The object of all rules of construction of contracts is to ascertain what the parties meant and intended. There is no difference between the contracts of a municipality and other contracts as to the canons of construction."

In principle, this case is quite similar to Nash v. Page, 80 Ky. 539, 44 Am. Rep. 490. In that case the tobacco buyers of Louisville, as a body, passed a resolution binding all of them not to buy tobacco from the tobacco warehouses belonging to the Tobacco Board of Trade, for the reason that their charges were excessive. In retaliation the warehousemen adopted a by-law prohibiting any of its members from selling tobacco to the seceding buyers. The buyers in return brought their action against the warehousemen seeking to compel them to sell tobacco to the seceding buyers. The court, upon a review of the authorities, was of opinion that the warehousemen were engaged in a business affected with a public interest and were required, for that reason, to treat all persons alike and to sell to any responsible buyer. But the court refused any relief to the buyers because they were as much in fault as the warehousemen.

And, such is the case here. The city of Winchester passed a resolution cancelling the contract with the company, thereby, at least, putting in jeopardy the company's right to recover for its lighting bills; and, in now saying that its act in that respect was ineffectual, although it has never been rescinded, the city finds itself in the same position in which the buyers found themselves, in Nash v. Page, *supra.*

It is not now necessary to decide, nor do we decide, what was the effect of the city's resolution terminating the contract; we only decide that the city has placed itself in a position where it cannot, in good conscience, successfully appeal to the chancellor for the relief sought. There is no equity in the bill.

The injunction granted by the circuit court is dissolved. The whole court sitting.