CURETON, C. J. The opinion of the Commission of Appeals, answering the certified question, is adopted and ordered certified.

## MADDOX MOTOR CO. v. FORD MOTOR CO.
### (No. 1180—5172.)

Commission of Appeals of Texas, Section A. Jan. 22, 1930.

334

Everett Bryson, of Texarkana, S. P. Jones and Franklin Jones, both of Marshall, and Raymond H. Buck, of Fort Worth, for plaintiffs in error.

Allen & Allen and Leon C. Huvelle, all of Dallas, for defendant in error.

CRITZ, J. This suit was filed in the district court of Camp county by F. W. Maddox and J. H. Mitchell, who did business under the firm name of Maddox Motor Company, against the Ford Motor Company, a corporation, to recover damages for the breach of an alleged oral automobile sales contract. Trial in the district court resulted in a judgment for Maddox Motor Company for $23,500 damages. The Ford Motor Company appealed from this judgment to the Court of Civil Appeals at Texarkana, which court reversed the judgment of the trial court and remanded the cause for a new trial. 3 S. W.(2d) 911. The case is now before this court on writ of error granted on application of Maddox Motor Company. For the sake of brevity, we refer to the opinion of the Court of Civil Appeals for such statement of the case as we do not include herein.

The trial court submitted the case to the jury on special issues, and, among others, submitted the following as special issue No. 6: "Do you find from a preponderance of the evidence that K. W. Brown, in making said verbal agreement, if any, had authority to make said verbal contract, if any, for Ford Motor Company, or in making same, if any, was he acting within the apparent scope of his authority?" The jury answered this question "Yes."

We will say at this point that we are unable to say from the question as asked and answered whether the jury found Brown had actual authority or merely apparent authority, or both. The issues are submitted in the disjunctive.

[1] The Court of Civil Appeals holds in effect that there is no evidence in the record to sustain a finding of either actual or apparent authority on the part of Brown. We are of the opinion that the evidence set out in the opinion of the Court of Civil Appeals does constitute some evidence on the issue of apparent authority; that is, we are of the opinion that the facts on this issue are not so definitely in favor of either party as would authorize the trial court to instruct a verdict, or an appellate court to render a judgment.

Notwithstanding our disagreement with the conclusion of the Court of Civil Appeals in the above matter, it is plain that, even if this were the only question involved in this appeal, we would have no authority to render judgment here for plaintiff in error, or to affirm the judgment of the district court. This is on account of the right or jurisdiction of the Court of Civil Appeals to determine the facts of a case, and its power to set aside the findings of a jury in the trial court and remand the case for another trial. Tweed v. Western Union Telegraph Co., 107 Tex. 247, 166 S. W. 696. See opinion on rehearing, page 253, of 107 Tex., 177 S. W. 957, 958. "This proceeds from the jurisdiction of the Court of Civil Appeals to determine the facts of a case, and its undoubted power to set aside the findings of the jury in the trial court, and remand the case for another trial." Tweed v. Western Union Tel. Co., supra. The Court of Civil Appeals has jurisdiction to determine the facts, and, where they hold there is no sufficient evidence to sustain the verdict, the Supreme Court will presume that they would have held that the verdict was contrary to the weight of the evidence. Pollock v. H. & T. C. R. R. Co., 103 Tex. 69, 123 S. W. 408. This holding is also expressly approved in the Tweed Case, supra.

We quote the following from the opinion of Judge Phillips in the Tweed Case, supra: "An extended printed argument has been filed in this case by counsel for the plaintiff in error, urging that we ought to render judgment in his favor because of our not having sustained the conclusion of the Court of Civil Appeals that Tweed was guilty of contributory negligence as a matter of law, the jury having resolved that issue in favor of the plaintiffs; but, in view of these plain adjudications as well as the explicit opinion of Judge Gaines in Choate v. San Antonio & A. P. Ry. Co., 91 Tex. 406, 44 S. W. 69, we find some difficulty in understanding how any misapprehension could have arisen upon this question. With the Court of Civil Appeals invested with the full power of determining the facts of the cause, and setting aside the verdict of a jury on the facts, it must be assumed, as is said in the opinions quoted, that in reaching a conclusion that the evidence showed as a matter of law that the plaintiff was not entitled to recover, and for that reason ordering that the cause be remanded, in the same case it would have held that the verdict was against the weight of the evidence. With a case thus remanded under the judgment of the Court of Civil Appeals, it would amount to a denial of its authority to determine the facts and set aside a verdict on the evidence for this court to assume the power of rendering the judgment because it differed with the conclusion reached by that court upon the effect of the evidence."

In the case at bar, we are of the opinion that there is evidence in the record, and quoted by the Court of Civil Appeals to support the contention of Maddox Motor Company, that K. W. Brown was clothed with apparent authority to make the contract for Ford Motor Company; but, the Court of Civil Appeals having found there is none, and that court being invested with power to determine the facts of the case and set aside the verdict on the facts and remand for a new trial, it must be assumed that, in reaching the conclusion that there are no facts

to establish apparent authority on the part of Brown, and for that reason ordering a remand of the case, said court would have held the verdict was against the weight of the evidence. Choate v. S. A. & A. P. Ry. Co., 91 Tex. 406, 44 S. W. 69. The Choate Case is also cited with approval by Judge Phillips in the Tweed Case, supra.

Since this case must stand reversed and remanded, there is another question which we deem it proper to discuss.

As shown by the opinion of the Court of Civil Appeals, Maddox and Mitchell, the plaintiffs in error, filed an application with the Ford Motor Company's branch office at Dallas for a similar contract as one theretofore held by one Nichols for the sale of Ford products at Pittsburg, Tex. For the purpose of pressing their application, both Maddox and Mitchell went to Dallas and there had a personal interview with one K. W. Brown, an agent and chief roadman of the Ford Motor Company in Texas. What was said between Brown and plaintiffs is relied on by plaintiffs as constituting the first contract.

This conversation, as set out in the opinion of the Court of Civil Appeals, is as follows: "The conversation, as well as I remember, started, the first thing—when K. W. Brown walked up there and shook hands with us, and he said, 'Now, gentlemen, if you have come over to intercede for the old dealer, Mr. Nichols, I am a busy man, and I haven't got time to talk to you.' I said, 'Mr. Brown, I have come over here to make application for the Ford agency myself for Pittsburg.' When I told him that I was over there to negotiate for the agency or contract at Pittsburg. Brown said, 'Mr. Maddox, you understand I have got seven applications on my desk now for the agency at Pittsburg, and some of them are old experienced dealers; but,' he said, 'Listen, if you will do what I want you to, I will give you the contract.' And I said, 'Mr. Brown, what do you want me to do?' and he said, 'Go back home and secure a well located lot and build a house, a building that we will accept and approve, not only for the present time, but for the future home of the Ford.' I says, 'Mr. Brown, how long will you give me a contract if I will go home and secure a location that you will approve and build a building that you will accept on it?' He said, 'You understand, Maddox, the written contract that we put out is only for twelve months'; and I said, 'Mr. Brown, I couldn't build a building—buy a lot and build a building like you would want for any Ford contract for a period of twelve months'; and he said, 'Listen, Maddox, you ignore the written contract that will be sent you later; I will give you a contract for a period of six years, if you will do what we want you to do, buy a lot and build a building that we will accept and approve, at Pittsburg.' I said, 'I will do that.' He then turned around to Dr. Mitch-

ell and said, 'Dr. Mitchell, will Maddox build a building like we want in Pittsburg? Will you guarantee it, Doctor, that he will build a building like we want?' and Dr. Mitchell said, 'I will guarantee that he will build it as you require'; and he said, 'Then that is enough. I am a busy man. You go back home, and I will ship you some cars,' which he did."

As shown by the findings of the Court of Civil Appeals, within a few days after their return to Pittsburg, Tex., the plaintiffs received from the Ford Motor Company a very lengthy written contract, which contained many provisions and stipulations not necessary to mention here, but which, among the many others, contained the following provisions:

"(17) This agreement shall continue in force and govern all transactions between the parties hereto until cancelled or terminated by either party, but it is agreed that either party shall have the privilege, with or without cause, to cancel and annul this agreement at any time upon written notice by registered mail, or personal delivery of notice to the other party, and such cancellation shall also operate as a cancellation of all unfilled retail and other orders and requisitions for all products of Company which may have been received by the Company from the Dealer prior to the date when such cancellation is served.

"(18) In case of the cancellation or termination of this agreement the Company may, at its option, re-purchase from the Dealer at the price which he paid therefor, plus freight, all such of the aforesaid new and unused Ford automobiles, trucks, chassis, Fordson tractors, Lincoln automobiles, chassis, parts and accessories as he may have on hand unsold at the date of such cancellation or termination. Company shall be entitled to take possession of all such Ford automobiles, trucks, Fordson tractors, Lincoln automobiles, chassis, parts and accessories remaining on hand and wherever found, without any legal liability whatever, upon tendering to Dealer the said purchase price thereof plus freight.

"(19) Upon termination of this agreement by cancellation or otherwise the Dealer shall turn over to the Company all bona fide retail orders that he may have on hand unfilled and also list of any prospective purchasers within his knowledge and the Company shall not be liable in any manner whatsoever on account of the cancellation or termination of this agreement, even though thereafter the Company or any new representative should complete any deals inaugurated by Dealer.

\* \* \* \* \* \*

"(22) The failure of the Company to enforce at any time any of the provisions of this agreement, or to exercise any option which is herein provided or to require at any time

performance by the Dealer of any of the provisions hereof, shall in no way be construed to be a waiver of such provisions, nor in any way to affect the validity of this agreement or any part thereof, or the right of the Company to thereafter enforce each and every such provision.

\*　\*　\*　\*　\*　\*

"(24) Dealer shall have no right to assign this agreement, or any interest in it, without the written consent of the Company.

"(25) It is mutually understood this is a Michigan agreement and shall be construed as such. And it is further understood by the parties hereto that this is a general selling agreement intended for use by Company wherever its products may be sold and therefore if any of its provisions shall contravene, or be invalid, under the laws of the particular State, Country or Jurisdiction where used, then it is agreed that such contravention or invalidity shall not invalidate the whole agreement but it shall be construed as if not containing the particular provision or provisions held to be invalid in the said particular State, Country or Jurisdiction and the rights and obligations of the parties shall be construed and enforced accordingly."

The above-mentioned contract was dated March 14, 1923, and was duly signed in triplicate by both parties. On January 2, 1924, Maddox Motor Company received another contract from Ford Motor Company with notification that it was to supersede the former contract. This contract was in all material respects the same as the first written contract, and contained all the above-quoted provisions. This contract was executed by the parties, and superseded the one of date March 14, 1923.

In March, 1924, Maddox went to Dallas for another conference with the representatives of Ford Motor Company, and the following is a part of the conversation which took place between Maddox and said K. W. Brown, representative of Ford Motor Company: "'If you will go back and do your best and secure this lot and build on it at the quickest possible moment, we will give you more cars, and we will let you have this contract for the period of six years, which I agreed to let you have.' So I left the office and went back, and they began to ship me cars, and I went ahead with my business."

As shown by the opinion of the Court of Civil Appeals the plaintiffs rely on the written contract of date January 2, 1924, as modified by the parol agreement made at Dallas in March following; that is, the agreement testified to by Maddox, wherein Brown agreed, in substance, to let plaintiffs have "*this* (italics ours) contract for a period of six years, which I agreed to let you have."

■ Now, under all the authorities, both of the parol agreements are too general and indefinite to constitute either of them a contract. Therefore, in order to constitute either of the oral agreements a contract, it is necessary to construe such agreements in the light of the written contract. When this is done, and the second oral agreement is viewed in the most favorable light for the plaintiffs, we have an agreement on the part of the Ford Motor Company to give to the plaintiffs a contract of agency similar in all respects to the one they already had, except where expressly and necessarily altered or changed by the oral contract.

■ Now we understand that it is the contention of plaintiffs that the effect of the last oral agreement is to give them a six-year agency, not subject to cancellation at all, but in other respects the same as the written contract. In our opinion, the statement of K. W. Brown should not, as a matter of law, be given such a construction. The provisions of clauses 17, 18, 19, 22, and 25 are evidently very important, and contain provisions that refer to matters other than of duration, and the statement in paragraph 25, "and it is further understood by the parties hereto that this is a general selling agreement intended for use by company wherever its products may be sold," etc., is very significant and should be given tremendous weight. It amounts to an express statement that Maddox Motor Company was operating under the same general contract as other Ford dealers.

■ If we give the oral statement of Brown (we view it in the light of all that was said), a construction that it has the legal effect to adopt the written contract as the agreement between the parties, for a fixed period of six years, not subject to cancellation or termination by either party, then we must give it also the legal effect to practically nullify all, and not adopt any, of the provisions of said sections 17, 18, and 19, and render meaningless section 25. The oral agreement between the parties is not in law susceptible of such a construction. To do so would be to do violence to the intent of the oral agreement, as expressly stated by the parties.

If the last oral agreement be given a construction which in law would constitute it definite enough to be enforced at all, then it must adopt all of the written contract that is not in conflict with said oral agreement, and, when this is done, section 17 will read as follows: This agreement shall continue in force and govern all transactions between the parties hereto for a period of six years, but it is agreed that either party shall have the privilege, with or without cause, to cancel and annul this agreement, etc.—and the balance of section 17 will remain the same.

■ The question as to whether or not the contract was made (that is, what was said and done between the parties), where the testimony is conflicting, presents a fact issue, but the construction of the contract,

granting it has been established, is a law question.

It is a well-established rule of law that a contract may provide for its termination at the option of one or either of the parties, and such a stipulation, when fairly entered into, will be enforced if not contrary to equity and good conscience. Such a provision in a contract has no effect on the binding obligations of the contract so long as the parties act thereunder, before revoking or terminating it. 13 C. J. p. 606. Under the plain terms and express provisions of this contract, and the facts and circumstances shown of record, the stipulation for termination was fairly made, and the results and consequences must have been fully foreseen and understood by all the parties. Further, the pleadings raise no issue of fraud, accident, or mistake.

It is also a rule of law that, when a contract has been changed by mutual consent of the parties, it ,becomes a new agreement, which takes the place of the old, and the new agreement consists of the new terms and as much of the old as the parties have agreed shall remain unchanged. When a written contract is modified verbally, as a general rule, the entire contract becomes an oral one. 13 C. J. p. 595, § 615.

The first oral agreement was either superseded by the first written contract, or the two must be construed together, and the last oral agreement relied on by Maddox Motor Company, unless it adopted the terms of the last written contract, was too general and indefinite to constitute any contract at all. If it adopted any of the terms of the written contract, then, under the circumstances of this case, it certainly adopted all of them that are not inconsistent with the oral agreement. The effect we give the oral agreement does no violence to its own terms, and in effect incorporates it into the written contract, with every other feature and provision of the written contract given full force and effect, and also gives full force and effect to the oral agreement, and leaves no conflict between the oral agreement and the written contract.

Now, let us view this matter from another angle. When K. W. Brown told Maddox and Mitchell in their first conversation with him that he would give them a contract for six years, he told them that the written contract that they put out was only for twelve months. On being told by Maddox that "I couldn't build a building—buy a lot and build a building like you want for any Ford contract for twelve months," plaintiffs were told by Brown that he would give them a contract for six years, and that the written contract would be sent them later. The written contract was sent them, being the first written contract of date March 14, 1923. This contract contained all of the above-quoted provisions, and, as shown, was subject to cancellation and annulment by either party in the manner therein provided. Maddox and Mitchell executed this contract, so far as the record shows, without modification or objection, and it either superseded the first six-year oral agreement, or, construing said oral agreement and the first written contract together, the parties had a six-year contract, subject to cancellation and termination as in the written contract provided. In other words, in either of the above events, either party, under the first written contract, or under said contract and oral agreement, had the right of cancellation. Later another written contract containing exactly the same provisions with reference to cancellation and termination is executed by the parties, being the one of date January 2, 1924. After all this is done, Brown again tells Maddox, "We will let you have this contract for a period of six years, which I agreed to let you have." Under such a record it would be contrary to reason to hold that the latter oral agreement adopted the terms of the written contract of date January 2, 1924, without the provisions in regard to the right of cancellation and termination.

Finally, we will say that, if the oral agreement be given any other construction than the one we have given it, then it is too general and indefinite to constitute it a contract at all. If it is no contract at all, there is no basis for this suit, and, if it be given the other construction, the same result is reached. In no event is there any basis for the judgment under the facts as proved.

We pretermit any discussion of the matters assigned in the Court of Civil Appeals by Ford Motor Company, involving excessiveness of the verdict, and exclusion of evidence bearing on issues kindred thereto, which were not passed on by the Court of Civil Appeals, and which we do not pass on, as they will not probably arise again.

For the reasons stated, we recommend that the judgment of the Court of Civil Appeals, reversing the judgment of the District Court and remanding the cause for a new trial, be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversing and remanding the cause affirmed, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.