## MIDWEST DAIRIES, Inc., v. WYNNE.

### No. 3153.

Court of Civil Appeals of Texas. El Paso.
March 21, 1935.

Rehearing Denied April 18, 1935.

A. H. Culwell and Turney, Burges, Culwell & Pollard, all of El Paso, for appellant.

Harrison, Scott & Rasberry, of El Paso, for appellee.

PELPHREY, Chief Justice.

On June 2, 1933, appellee and appellant entered into a written contract relative to the drilling of a water well for appellant on its premises located on Piedras street in the city of El Paso, Tex. This contract provided that the well should be drilled to a maximum depth of 900 feet if necessary to get satisfactory water; that appellee was to furnish all necessary pipe to case the first hundred feet of the well with eight-inch casing and the remainder with six-inch casing. The compensation fixed by the contract was $2 per foot. Appellee drilled the well to a depth of 745 feet. At that point the drilling ceased, and there is a conflict in the evidence as to subsequent negotiations.

Appellee filed this suit and, after setting out the execution of the original contract, alleged ambiguities in the contract of June 2, 1933, and that because of the acts of appellant in stopping him from drilling the well deeper he was entitled to a recovery of $1,490, being $2 per foot for 745 feet, less any sums already paid. Appellee further alleged that the parties, on or about September 1, 1933, mutually abandoned the first contract and entered into a verbal contract to enlarge the well to 12 inches for the first 150 feet, 10 inches for the next 595 feet, and 8 inches thereafter to a depth of 900 feet, unless satisfactory water was found at a lesser depth; that in said contract appellant agreed to pay appellee $2 per foot for each foot the well had already been drilled, to pay all costs for enlarging the well, to pay all costs of the additional drilling, and to pay appellee 10 per cent. of all such costs as his compensation; that appellant wrongfully refused to permit him to proceed with the enlargement of the well and to furnish material necessary therefor. He prayed for judgment in the sum of $1,240, the amount due on work performed, and for damages in the sum of $252.50 for breach of the contract to enlarge the well. Appellant answered by general and special exceptions, general denial, and specially denied the making of the contract of September 1st, and alleged an abandonment of the contract of June 2d by appellee. It further, by way of cross-action, sought to recover the liquidated damages provided for in the contract of June 2d.

The following questions were submitted to the jury and were answered as indicated:

"Question No. 1: Do you find from a preponderance of the evidence that, on or about September 1st, 1933, the said Greer Nelson orally agreed with the said P. D. Wynne that the well theretofore drilled should be enlarged to permit the setting of twelve-inch casing in the first 150 feet of said well and ten-inch casing for the next 595 feet, such casing to be cemented, and after cementing same, drilling was to continue to permit the setting of eight-inch casing until a depth of 900 feet was reached, unless satisfactory water was discovered at a lesser depth, and for enlarging said well and setting the said casing and said additional drilling, Greer Nelson agreed to pay plaintiff $2.00 a foot for each and every foot in depth said well had already been drilled and to pay all costs for enlarging said well and to pay plaintiff 10% of such costs as his compensation, and to pay the costs of additional drilling, and included in such cost was plaintiff's services at $7.00 per day, payment for labor and fuel oil to be made on Saturday noon of each week, plus 10% of the cost of labor and fuel oil? Answer yes or not. Answer: Yes.

"Question No. 2: Was it the intention of the parties, that, before such oral agreement, if any, became effective, the same would be reduced to writing and signed by both parties or their duly authorized agents? Answer: No.

"Question No. 3: Do you find from a preponderance of the evidence that Greer Nelson had implied authority, if any, to make the agreement inquired about in Question No. 1? Answer: Yes."

"Question No. 5: What do you find, from a preponderance of the evidence, to be the reasonable cost of reaming said well and setting such casing to a depth of 745 feet? Answer: $1.00 a foot.

"Question No. 6: What do you find, from a preponderance of the evidence, to be the reasonable time for reaming said well, as required, to a depth of 745 feet, and setting such casing? Answer: Ten days.

"Question No. 7: Did both parties to the agreement inquired about in Question No. 1, if it was in fact made, intend by such agreement to substitute the same for the agreement under which the well had been dug to its then depth? Answer: No."

"Supplemental Issue A: Do you find from a preponderance of the evidence that Greer Nelson, on behalf of the defendant, and Wynne entered into an oral agreement for the reaming and further work on the well, and that in such agreement Greer Nelson, on behalf of the defendant, agreed, among other things, to pay Wynne $2.00 a foot, or $1490.00, for the work already done on the well? Answer: Yes."

Upon these answers judgment was rendered in favor of appellee for the net amount of $1,340.90, and this appeal resulted.

### Opinion.

Appellant's assignments attack the court's action in overruling its general demurrer, in submitting question No. 1, and in refusing to give the peremptory instruction requested by it. The propositions advanced are: (1) That the only recovery under a contract which was never performed, or for an anticipatory breach of contract, would be such profits, if any, as would have been made; (2) that where there is a voluntary abandonment of rights secured or to be secured under a contract, there can be no recovery; (3) that the judgment is against the manifest weight and great preponderance of the evidence to such an extent that appellant's motion for judgment non obstante should have been granted or the judgment set aside on its motion for a new trial; and (4) that a new trial should have been granted because of a conflict in the jury's findings.

Appellant in its fourth proposition argues that the judgment was erroneous because of a conflict in findings 1 and 7.

As above quoted, question No. 1 was as to the making of the agreement of September 1st, while in answer to question No. 7 the jury found that the parties did not intend to substitute such agreement for the contract under which the well had been dug to its then depth. Appellant's contention is that by the latter finding the contract of June 2d was necessarily still in force and effect, and that any recovery for the drilling theretofore done would have to be under that contract, and that there was no pleading upon which to base a recovery under such contract.

Appellee counters with the contention that the contract of September 1st, as a matter of law, replaced the contract of June 2d, and that therefore question No. 7 was immaterial and was properly disregarded by the court. With this contention we agree. Maddox Motor Co. v. Ford Motor Company (Tex. Com. App.) 23 S.W.(2d) 333; Burke v. Purifoy, 21 Tex. Civ. App. 202, 50 S. W. 1089.

Appellee alleged the terms of the agreement to be: "That as hereinbefore alleged, plaintiff drilled said well to a depth of 745 feet at which time the agents and servants of defendant stopped plaintiff from further drilling and on or about the 1st day of September, A. D. 1933, the said Greer Nelson, with the sanction and approval of Robert Price, orally agreed with plaintiff to change said contract to provide that the well should be enlarged to the necessary size to permit the setting of 12-inch casing, in the first 150 feet from the surface, and 10-inch casing for the next 595 feet, which was to be cemented and after such cementation, drilling was to continue to permit the setting of 8-inch casing until the depth of 900 feet was reached unless satisfactory water was discovered at a lesser depth, and for the enlarging of said well and the setting of said casing and such additional drilling defendant agreed to pay plaintiff $2.00 a foot for each foot in depth said well had already been drilled and to pay all costs for enlarging said well, and to pay plaintiff 10 per cent of such costs as his compensation, and to pay all costs of additional drilling, and to pay plaintiff for his compensation 10 per cent of such costs for additional drilling, and it was understood and agreed that computed in said costs for enlarging said well was included plaintiff's services as driller at the rate of $7.00 per day." And, after setting out the terms of the original contract, he alleged the execution and breach of the new one as follows: " * * * and on or about September 1, 1933, plaintiff and defendant entered into a new contract to enlarge said well, the terms of which are hereinafter more specifically described, which contract constituted a mutual abandonment of the contract of June 2, 1933, and thereafter the defendant breached said new contract under circumstances justifying plaintiff to refuse to proceed further in that defendant repudiated said contract and refused to allow him to enlarge said well in accordance therewith. * * * "

These allegations find support in the evidence, and while the rule as to the measure of damages in cases of anticipatory breach of contract referred to by appellant is a correct one, we are of the opinion that it could not apply to facts such as we have before us. Here the well had been drilled to a depth of 745 feet under the first contract; then appellant decided to enlarge the well and, according to appellee's version, agreed to pay him $2 per foot for the drilling he had al-

ready done and for enlarging the well and the further necessary drilling on a cost plus basis.

As we have already held, this agreement replaced the old contract, and should we agree with the contention now advanced by appellant, appellee would be precluded from a recovery for the work already done because he did nothing after the new agreement was made. Such position is untenable.

The evidence does not support appellant's proposition as to voluntary abandonment.

The evidence is sufficient to warrant the submission of the issues to the jury for its determination. Appellee testified to the making of the new agreement, and the jury was the judge of his credibility, and the fact that his testimony was disputed by other witnesses would not change the rule or justify us in reversing the judgment.

Finding no reversible error in the record, the judgment of the trial court is affirmed.