ARECIBO MOTOR COMPANY, Plaintiff and Appellant, *v.* CARIBE MOTORS CORPORATION, Defendant and Appellee.

No. 8423.  Argued April 7, 1942.—Decided May 18, 1942.

392

*L. Mercader* for appellant.· *Brown, González & Newsom,* and *E. Córdova Díaz,* for appellant.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

This is an appeal taken by the Arecibo Motor Company, from a judgment rendered by the District Court of San Juan dismissing its claim against the Caribe Motors Corporation for $116,900, as damages for breach of a contract entered into between the parties. Although the appellant in its brief assigns eight errors, the only fundamental question involved in this appeal is whether or not the lower court erred in holding that the verbal agreement made by the plaintiff, first with the firm of Figueroa & Gautier and then with defendant Caribe Motors Corporation, was one for an indeterminate period or term which could be canceled at any moment by either party.

The lower court in its opinion in support of its judgment partly said:

"We have carefully considered the whole of the evidence introduced by both parties, and especially that for the plaintiff, from which it appears that no written contract was ever entered into between the plaintiff and Figueroa & Gautier for the sale of such

vehicles, and still less between the plaintiff and defendant. The oral evidence clearly and definitely shows that, pursuant to a verbal agreement between the plaintiff and Figueroa & Gautier, the former was granted the exclusive right to sell the said vehicles in the Arecibo district, and that said right was granted without fixing any period or term. Such being the case, even supposing that the defendant had ratified and adopted as his own the verbal agreement or contract entered into between Figueroa & Gautier and the plaintiff, said contract was without any period of duration and could be terminated at any time.

''*      *      *      *      *      *      *

''We are satisfied that there never existed as between the plaintiff and the defendant any agreement or contract whatever binding the defendant to sell to the plaintiff any vehicles during a certain number of years, and that there only existed a verbal contract, having no fixed term, whereby the defendant bound itself to sell to the plaintiff any vehicles that might be bought by the latter for resale within the Arecibo district. The defendant could not grant more than it had, inasmuch as its contract with the General Motors Corporation, Foreign Distributors Division, can be canceled at any time by either party upon notice in writing or by cable to that effect.''

■■ Does the evidence submitted by the parties support the conclusion reached by the lower court that the verbal contracts between the plaintiff and Figueroa & Gautier and the plaintiff and the defendant were for an indefinite period and could be canceled at any time by either of the parties? After a careful consideration of the transcript of the evidence, we think that this question should be answered in the affirmative. Let us see, briefly, what was the testimony of the witnesses for both parties as to the duration of the contracts.

José J. Figueroa, a partner of the firm of Figueroa & Gautier which was the distributor for Puerto Rico of the General Motors Corporation, testified for the plaintiff and stated that said firm had made a verbal agreement with the Arecibo Motor Company similar to those which it had made with Hernández of Mayagüez, Héreter of Caguas, and other

dealers in the Island; that Figueroa & Gautier agreed to grant to the plaintiff the agency in Arecibo for all the lines entirely on the basis of an indefinite time, which might be for five, ten, or fifteen years . . . "so long as I had the agency of General Motors and so long as they complied with the agreement"; that the contract between Figueroa & Gautier and the General Motors could be terminated at any time by either party, and accordingly, in July 1939, the General Motors canceled their agency; that in order to do business with the plaintiff, Figueroa & Gautier, about March 1939, required Doctors Carmelo and Rafael Colón to form a partnership for a term of five years, which they did under the name of Arecibo Motor Company, so that they could make arrangements with the General Motors Acceptance Corporation which financed the business, and also to establish a store and warehouse in Arecibo; that Figueroa & Gautier sold the cars to the plaintiff and the latter resold them in its district. On examination by the judge, he ratified his statement that he contracted with the plaintiff for so long as he had the agency of General Motors and so long as they complied with the contract; that the agreement was to last always, provided he had the agency. On cross-examination, he again stated that the contract was for an indefinite period, although he meant it to last as long as he had the agency of General Motors; that the General Motors and Figueroa & Gautier were at liberty to terminate the contract at any time; that the subagents of Figueroa & Gautier in the Island could at will terminate their contracts with the said firm at any time; that Figueroa & Gautier was also at liberty to do the same, but that it only would have done it for just cause.

Dr. Carmelo Colón, one of the partners of the plaintiff, testified that Figueroa & Gautier gave them the agency in Arecibo for a period of five years, and that for this purpose he had to form a partnership with his brother Rafael, which he did; that the plaintiff used to buy the cars from Figueroa & Gautier for cash; that they were the agents for Figueroa

& Gautier from April to July, 1939; that in the latter month Figueroa & Gautier discontinued its business and the plaintiff went on doing business with defendant Caribe Motors Corporation; that it was agreed with the defendant that the plaintiff would continue the business as with Figueroa & Gautier; that he contracted with Mr. Conway, General Manager of the defendant company. It is advisable to transcribe the testimony of the witness regarding this particular as the same appears on page 81 of the transcript of the evidence:

"Attorney.—This agreement, then, was entered into between you and Mr. Conway: you for Arecibo Motor and Mr. Conway for Caribe Motors?

"Witness.—For Caribe Motors. He told me that the agreement w uld be a continuation of the agreement with Figueroa.

"Att'y.—Did you tell Mr. Conway that you had a contract for five years with Figueroa & Gautier?

"Witness.—Yes, I told him. He asked me whether it was a verbal or a written contract and I told him that it was verbal.

"Att'y.—My question is whether you told him that you had a five-year contract with Figueroa & Gautier.

"Witness.—*I think so, that I told him,* because we talked of our agreement with Figueroa.

"Att'y.—Are you or are you not sure that you told him?

"Witness.—*Well, I do not remember now exactly whether I did or not,* but what I exactly remember is that he said to me that we would continue exactly under the same terms as we formerly worked with Figueroa. I exactly recollect that." (Italics ours.)

The witness further stated that the defendant canceled the contract with the plaintiff on November 16, 1939, without any cause or justification whatever, inasmuch as the reason stated to them in the letter from Mr. Conway, dated the 14th, to the effect that some of the partners of the plaintiff were associated with a firm that had assumed the agency in Arecibo of a competing line of automobiles and trucks, had no foundation in fact; that he protested against the cancellation of the contract and came to San Juan and con-

ferred with the partners of the defendant, but notwithstand-
ing his insistence that his contract with Figueroa & Gautier
was for five years, the attitude of the defendant remained
unchanged.

As to the duration of the contract, the above was briefly
all the evidence for the plaintiff.

· Augusto Gautier, a partner of the firm Figueroa & Gau-
tier, testified for the defendant and stated that none of the
contracts entered into by said firm with the distributors in
the Island was for any fixed term or period; that the agree-
ment with the plaintiff was similar to others and could be
terminated at any time for just cause, to be determined by
Figueroa & Gautier; that when they ceased as agents of
General Motors, they advised the defendant to continue doing
business with the latter's agents in the Island. On cross-
examination, he testified that Figueroa & Gautier never
required of the plaintiff to form a partnership for five years,
as the witness's firm could never undertake to grant a con-
tract for a period not available to Figueroa & Gautier.

It was likewise testified by Manuel Hernández, Pablo
Héreter, Jr., and José M. Rocafort subagents, first, for Figue-
roa & Gautier and, then, for the defendant, in Mayagüez,
Caguas, and Humacao, respectively, that their contracts with
those firms were not for any definite time, because it depended
on whether Figueroa & Gautier or the defendant held in turn
the agency of General Motors for Puerto Rico, and that
either of the parties could terminate the contract at any
time; that when Figueroa & Gautier discontinued the busi-
ness, the defendant informed them through Mr. Conway that
they would continue the business on trial.

Antonio Prieto Subirat, formerly an industrial partner
of the plaintiff and afterward an employee of the defendant,
also testified for the latter and corroborated the statement
that the agreement with Figueroa & Gautier was to last as
long as the latter had the agency of General Motors and that
no such period of five years was ever agreed upon; that when

Figueroa & Gautier ceased and defendant started, Mr. Conway called together all the subagents in the Island and told them to continue as before and that if a change became necessary, he would give advanced notice thereof.

Guillermo E. González and Charles D. Conway, witnesses for the defendant, corroborated the testimony of the other witnesses to the effect that the defendant never entered into a contract for a definite period with either the plaintiff or any other subagent of Figueroa & Gautier in the Island, as all they did was to inform them at a meeting held in the Berwind Country Club that said subagents would be kept on trial and if any change might be desired they reserved to themselves the right to make it at any time.

In view of such evidence, we can not agree with the appellant that the lower court erred in holding that both the agreement between the plaintiff and Figueroa & Gautier and that made with the defendant were not for a definite term or period. The only conclusion we can reach, after a careful analysis and consideration of the evidence, is identical with the one reached by the lower court. Moreover, it does not seem logical that either Figueroa & Gautier, or Caribe Motors, should have undertaken, as claimed by the plaintiff, to grant the latter, for a period of five years, their agency for the sale of the General Motors cars in the Arecibo district, when the contract of that corporation with said firms was and is subject to cancellation at any time by letter or by cable.

The circumstance that Figueroa should have advised the Colón concern that they constitute a five-year partnership in order that the General Motors Acceptance Corporation might finance their business and that, moreover, they must establish a showroom and a repair workshop, involves conditions precedent imposed on the plaintiff in connection with the contract negotiations; but it can not be construed in the sense that a fixed term had been agreed upon.

Section 1208 of the Civil Code (1930 ed.) which provides that "The validity and fulfillment of contracts can not be left to the will of one of the contracting parties," and which the appellant cites in support of its appeal, is not applicable to the facts of this case, for, as already stated, the evidence showed that the contract could be terminated, not by the defendant alone, but by either of the parties. Commenting on §1256 of the Spanish Civil Code, similar to §1208 of our code, Manresa upholds the validity of such contracts, as follows:

"Likewise the language of the section, by confining the prohibition to the arbitrary action by one of the parties, shows that it is quite licit to leave the rescission of the contract *to the will of either of the parties,* as often happens in certain contracts (lease of services, furnishing of electric power, etc.) because in such case the section is neither infringed, nor is there any discrimination made between the contracting parties, *who continue to have equal power regarding the performance."* (Italics ours.)

The appellant is mistaken in claiming that, in accordance with the evidence defendant Caribe Motors Corp. agreed with the plaintiff that their contract would last as long as the defendant had the agency of the General Motors Corporation in Puerto Rico. The preponderance of the evidence, which was believed by the lower court, shows that defendant never entered into such an agreement. Moreover, such claim is in open conflict with plaintiff's allegation that the contract with Figueroa & Gautier as well as that with the defendant was for a minimum term of five years. The appellant admits in its brief that the term of the contract between the plaintiff and Figueroa & Gautier "expired precisely when the latter lost the agency of the General Motors," and that "were it not for the ratification agreed upon by the defendant there would be no basis for the claim of Arecibo Motor against the Caribe Motors . . ." It happens, however, that, according to the evidence, there was no such ratification, and there-

fore all the subsequent argument of the appellant falls to the ground.

What the parties actually did was to enter into a contract of sale by virtue of which the plaintiff would buy from the defendant the General Motors cars with the exclusive right to resell them in the Arecibo district, without any limitation as to time. Notwithstanding the use by the parties and by the witnesses of the term "subagents" and "sub-dealers," the facts as shown prove that the plaintiff used to purchase from the defendant the cars in question at the prices agreed upon and was at liberty to resell them at the prices and upon the terms most advantageous to the plaintiff.

The difference between contracts of this kind and those of agency or subagency, is clearly set forth in 1 Mechem on Sales 41, cited in *Reiter* v. *Anderson,* 262 P. 415, as follows:

" 'A qualified form of "agency" which has grown up in modern times is that which exists when the owner or manufacturer of patented or other propriety articles grants the privilege of sale or of exclusive territory to one who otherwise might not be at liberty to sell the goods in question. It is entirely consistent with this arrangement that the so-called agent is to buy, of the proprietor or manufacturer, the goods which he is thus authorized to sell, and when this is the fact there is little more of "agency" in the case than the name itself. It is also entirely consistent with the arrangement that the "agent" is to sell the goods at a price or upon terms or conditions fixed by the proprietor or manufacturer. A person so situated is often, in popular language, said to have obtained the "agency" for the goods, when all that is meant is that he has obtained a more or less exclusive right to buy and resell them in a prescribed territory. The transaction is simple enough, but the reports show many cases in which the parties have, perhaps, deceived themselves and have certainly attempted to deceive others by calling that an "agency" which had no resemblance to agency in fact, but was simply a sale of a proprietary article with a right of resale under terms and conditions fixed by the proprietor.' 1 Mechem on Sales, pp. 41, 42."

In connection with this kind of contracts it has been held, by the weight of authority, that when no term therefor

has been fixed and it is stipulated that the contract may be canceled by either party, neither party can successfully prosecute an action for damages by reason of the termination of the contract by the other party.

In the case of *Ford Motor Co.* v. *Alexander Motor Co.,* 223 Ky. 16, 2 S.W. (2d) 1031, the court said:

"If parties agree that the rights, duties, and obligations arising from a contractual relation shall endure only at the will or pleasure of either, the courts have no right to substitute a different duration for such rights. Executory contracts, terminable at will, in so far as they are unexecuted at the time of termination, afford no basis for a cause of action to either party. (Citations.)

"Such contracts are binding on both parties, until the right of cancellation is exercised by one or the other."

In the case of *Maddox Motor Co.* v. *Ford Motor Co.,* 23 S.W. (2d) 333, it was held that "such contracts are binding on both parties until the right to cancel them is exercised by either party."

For a wider discussion regarding the nature and scope of such contracts, see 4 Williston on Contracts (1936) 2854, §1027 A, especially subdivision (5) and the cases and authorities cited in the notes.

The errors assigned by the appellant regarding the admission of the testimony of the witnesses for the defendant, Héreter, Hernández, and other subdealers, and of the testimony of González and Conway as to the terms of the contracts which said subdealers had first with Figueroa & Gautier, and then with the defendant, lack merit. Since Figueroa had testified, as a witness for the plaintiff, that the verbal agreement between Figueroa & Gautier and the plaintiff was similar to that made by said firm with the other distributors in the Island, and, further, as to its agreement with the defendant to call on said distributors to try to get them to continue with the defendant, the testimony of the above-mentioned witnesses was admissible under §385 of the Code of Civil Procedure (1933 ed.), which is §23 of the Law

of Evidence, to the effect that: "When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other . . .; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it wholly understood, may also be given in evidence."

■ Error is also assigned because the lower court adjudged the plaintiff to pay $350 as attorney's fees to the defendant on the ground that the plaintiff showed obstinacy in bringing this action. Taking into account all the attendant circumstances of this case, we think that the plaintiff can not be said to have acted obstinately in trying to obtain an interpretation which would be in harmony with its theory as to the terms of the contracts made with Figueroa & Gautier and with the defendant. No written contracts were involved that might clearly show the intention of the parties, the cases hinging on the interpretation of some verbal contracts, and an examination of the references made by us to the notes appended to the work of Williston on Contracts will show that a mere determination of the scope and power to terminate said contracts, even though they may be in writing, has been the subject of numerous legal proceedings and extensive monographs published in different law reviews.

With a modification so as to strike out the award of $350 as attorney's fees, the judgment appealed from should be affirmed.