CRYSTAL CITY, Appellant,

v.

LO–VACA GATHERING COMPANY, Appellee.

No. 6525.

Court of Civil Appeals of Texas, El Paso.

March 17, 1976.

Rehearing Denied April 14, 1976.

Rey Perez, Alberto M. Ramon, Crystal City, for appellant.

Bracewell & Patterson, Joseph Jaworski, J. Clifford Gunter, III, H. Bruce Golden, William T. Hurn, Richard A. Wells, William J. Mays, Houston, for appellee.

## OPINION

OSBORN, Justice.

This is a Declaratory Judgment case in which the Appellee obtained a summary judgment that its obligation to furnish gas to Appellant under a written contract terminated on April 21, 1975. We affirm.

Lo-Vaca Gathering Company, as the assignee of a gas contract originally made between Texas Gas Utilities Company and the City of Crystal City, began to furnish gas to the city on July 1, 1972. The contract provided:

"Buyer shall pay to Seller monthly for gas purchased 36¢ per one thousand (1,000) cubic feet.

"Nothing in this contract shall preclude the right of Buyer and Seller to make temporary adjustments to the price of gas herein set forth in this Article III to meet a special situation or condition, provided that such temporary injustments shall not be made except by mutual written agreement between Buyer and Seller."

The agreement was for a period of three months and continuing thereafter until cancelled by 30-day written notice on the part of either party.

In response to an application filed by Lo-Vaca, the Texas Railroad Commission on September 27, 1973, issued an Interlocutory Order and established an interim rate for all customers on the Lo-Vaca gas system at 5¢ per Mcf of gas, plus the Seller's weighted average cost of gas. The Order further provided that customers with contract prices for rates below the interim rate would be entitled to reject the interim rate within ten days from the date of the Commission's Order, and that any failure to file such rejection with the Commission would be tantamount to an agreement and approval thereof.

Crystal City did not file a rejection of the interim rate, but, in fact, paid for the gas at the higher rate until early 1975. In response to a letter in March advising Lo-Vaca that the City of Crystal City had voted not to pay for gas at the interim rates set by the order of the Railroad Commission, the President of Lo-Vaca, on March 21, 1975, wrote to the City of Crystal City advising that if the interim rate set by the Railroad Commission was not paid, the gas contract would expire in thirty days.

In order to obtain a judicial determination of its right to discontinue service, Lo-Vaca filed its petition for a Declaratory Judgment on April 22, 1975. Subsequently,

it filed a Motion for Summary Judgment which was supported by an affidavit from a senior vice-president of the company, along with exhibits which included the Gas Sales Contract, and Assignment of Gas Sales Contracts, the Railroad Commission Interlocutory Order dated September 24, 1973, and the letter of March 21, 1975. The Appellant filed an answer alleging that Appellee was obligated to furnish gas at the contract price since there had been no mutual written agreement for a temporary adjustment of the price of gas as required by the contract. It further contended that there was no waiver or estoppel of its right to rely upon the contract between the parties. Attached to the answer was an affidavit of the City Manager which stated that no new gas contract had been made by the parties and that the city had, at all times, paid Lo-Vaca for natural gas at the contract price and that the city was not in arrears.

The trial Court granted the Motion for Summary Judgment and declared the rights, status and obligations of the parties as follows:

(1) That Lo-Vaca's obligation to continue natural gas service to the city expired on April 21, 1975;

(2) Lo-Vaca is obligated to charge and collect the interim rate for gas set by the Railroad Commission;

(3) Crystal City has refused to pay such rate;

(4) Lo-Vaca is entitled to terminate service to the city unless such payment is made;

(5) The city has thirty days to make current its arrears and agree to pay the interim rate for future deliveries.

On this appeal the basic facts are not in dispute. Appellant recognizes that the contract provides for a right of termination by either party, and acknowledges that it did receive the letter giving the 30-day notice. It admits the Railroad Commission entered the Interlocutory Order for the interim rate and that the city did not reject such rate or make a direct attack upon the Commission's Order. The city does attack the right of Lo-Vaca to raise its price of gas based upon

the Railroad Commission Order without a compliance with the terms of the contract which requires written mutual agreement of the parties. By a single point of error, the city contends that trial Court erred in granting summary judgment because of the existence of material issues of fact.

■ We believe the trial Court's judgment can be affirmed on two separate grounds. First, the contract itself provides that the agreement " * * * shall be for a period of three (3) months, commencing at 7:00 A.M. December 1, 1971, and ending at 7:00 A.M. March 1, 1972, and continuing thereafter until cancelled by 30-day written notice on the part of either party." This clause is absolute and without any condition other than notice. There is no dispute but that both parties were bound by this clause in the contract and the notice required was given. These facts counsel for Appellant readily concedes. The courts of this state have consistently given effect to provisions which give a right or option to either party to terminate a contract. *Maddox Motor Co. v. Ford Motor Co.*, 23 S.W.2d 333 (Tex.Com. App.1930, opinion approved); *Dallas County Water Control and Improvement District No. 7 v. Ingram*, 395 S.W.2d 834 (Tex.Civ. App.—Dallas 1965, writ ref'd n. r. e.); *Kree Institute of Electrolysis, Inc. v. Fageros*, 478 S.W.2d 569 (Tex.Civ.App.—Waco 1972, no writ). Thus, we conclude that the contract having been terminated after the 30-day notice, Appellee was relieved of any further obligations to furnish gas to Appellant and the trial Court properly so held.

■ In addition, we conclude that Lo-Vaca was subject to regulation by orders of the Railroad Commission, and its contract with Appellant was subject to such orders concerning rates for natural gas sold by Appellee, which Appellant could not ignore with impunity. Lo-Vaca, as a public utility, is subject to the provisions of the Cox Act. See *Railroad Commission of Texas v. City of Austin*, 524 S.W.2d 262 (Tex.1975). Article 6053, § 1, Tex.Rev.Civ.Stat., specifically provides:

"The Commission after due notice shall fix and establish and enforce the ade-

quate and reasonable price of gas and fair and reasonable rates of charges and regulations for transporting, producing, distributing, buying, selling and delivering gas by such pipe lines in this State: * * * "

Further, Article 6054 provides:

"All orders and agreements of any company or corporation, or any person or persons controlling such pipe lines establishing and prescribing prices, rates, rules and regulations and conditions of service, shall be subject to review, revision and regulation by the Commission on hearing after notice is provided for herein to the person, firm, corporation, partnership or joint stock association owning or controlling or operating the gas pipe line affected."

■ There can be no question but that rates of service specified in contracts with public utilities are subject to change by the appropriate regulatory commission where the public interest is affected. *Union Dry Goods Company v. Georgia Public Service Corporation*, 248 U.S. 372, 39 S.Ct. 117, 63 L.Ed. 309 (1919). The rule was applied in *State v. Lone Star Gas Co.*, 86 S.W.2d 484 (Tex.Civ.App.—Austin 1935, writ ref'd) rev'd on other grounds, 304 U.S. 224, 58 S.Ct. 883, 82 L.Ed. 1304 (1938), involving a gas transmission company where the Railroad Commission under the Cox Act reduced the price of gas provided for in contracts. In approving the Commission's Order, the Court said:

"The contracts of appellee with the distributing companies for the 40-cent gate rate were made in the light of the Constitution and laws, and of the jurisdiction of the commission to regulate such rates. The order changing such rate is therefore not violative of the freedom of contract, or impairment of obligation clauses of either the State or Federal Constitutions (Const. Tex. art. 1, §§ 16, 19; Const. U.S. art. 1, § 10, cl. 1; Amend. 14)."

The Court recognized the right of the Railroad Commission to change the price of gas in *High Plains Natural Gas Company v. Railroad Commission of Texas*, 467 S.W.2d

532 (Tex.Civ.App.—Austin 1971, writ ref'd n. r. e.), but held that the evidence did not establish that a failure to do so would adversely affect the public interest.

■ Having concluded that a "public emergency and imperative public necessity" required an interim rate for gas sold by Lo-Vaca, the Railroad Commission had statutory authority to set such rate. Art. 6053, Tex.Rev.Civ.Stat. The Appellant made no direct attack upon that Order entered in September 1973, and may not now make a collateral attack upon it since the Order is not void on its face. *Railroad Commission of Texas v. Royal Petroleum Corporation*, 93 S.W.2d 761 (Tex.Civ.App.—Amarillo 1936, writ dism'd).

■ As a public utility, Lo-Vaca was obligated to comply with the Commission Order, and when the City of Crystal City determined not to pay the rates set by the Commission, Appellee had the right and duty to terminate service. *Community Natural Gas Co. v. Moss*, 55 S.W.2d 224 (Tex.Civ.App.—Eastland 1932, no writ); *City of Winchester v. Kentucky Utilities Co.*, 182 Ky. 144, 206 S.W. 296 (Ct.App., 1918).

The judgment of the trial Court is affirmed.