**HIGH PLAINS NATURAL GAS COM-PANY, Appellant,**

v.

**RAILROAD COMMISSION OF TEXAS et al., Appellees.**

No. 11824.

Court of Civil Appeals of Texas, Austin.

April 28, 1971.

Rehearings Denied May 19, 1971.

Fulbright, Crooker, Freeman, Bates & Jaworski, Jefferson D. Giller, Hugh Q. Buck, Jay W. Elston, Houston, for appellant.

Crawford C. Martin, Atty. Gen., Nola White, 1st Asst. Atty. Gen., Alfred Walker, Exe. Asst. Atty. Gen., James H. Cowden and James M. Mabry, Asst. Attys, Gen., Austin, R. D. Lemon, City Atty., Lemon, Close, Atkinson, & Shearer, Edward L. Atkinson, Perryton, for appellees.

PHILLIPS, Chief Justice.

Appellant High Plains Natural Gas Company has perfected its appeal to this Court from a judgment of the district court affirming an order of the Railroad Commission of Texas. Appellant had requested the Commission to fix a city gate rate for the sale of natural gas to a municipal corporation, the City of Perryton, Texas, which city, in turn, distributes and resells the gas to its burner tip customers. The Commission denied the application on the grounds that it had no jurisdiction be-

cause Perryton is a municipal corporation which owns its pipeline distribution system.

The City of Perryton intervened on the side of the Railroad Commission.

The district court held that the Commission does have jurisdiction to review the sales price covered by the contract, but where there is a contract price, the Commission, before it can revise the price, must determine that a modification of the contract price is required in the public interest. The trial court affirmed the Commission's order on the grounds that Appellant High Plains had failed to persuade the Commission, or the court, that the public interest required a modification of the High Plains-Perryton contract price.

We affirm this judgment.

Appellant High Plains Natural Gas Company is before us on fourteen points of error [1] which we overrule. The Rail-

---

1. Appellant's points, briefed together, are as follows:

"POINT NO. 1: The trial court erred in concluding that the Commission's Order of November 26, 1969 denying the application of High Plains, was valid; POINT NO. 2: The trial court erred in concluding that the Commission may revise a city gate rate for natural gas set in a contract only when the Commission makes a finding that it is in the 'public interest' to do so; POINT NO. 3: The trial court erred in concluding that the Constitution requires the Commission to make a determination upon a showing before it that 'public interest' requires that an applicable contract be modified as a condition precedent to the authority of the Commission to regulate and fix a city gate rate; POINT NO. 4: The trial court erred in concluding that High Plains had the burden of proving before the Commission and the court that a revision of the Contract was required to protect the 'public interest;' POINT NO. 5: The trial court erred in refusing to make a conclusion that the Commission had original jurisdiction under Article 6053 to fix a reasonable rate for the High Plains-Perryton city gate sale of gas, and to fix and establish this rate regardless of the existence of prices set forth in the Contract; POINT NO. 6: The trial court erred in refusing to make a conclusion that in establishing the rate for gas for a city gate sale, the Commission should use the same standard it

would use in the absence of contractually established prices; POINT NO. 7: The trial court erred in concluding that the Commission was not required to set a city gate rate in cents per Mcf.; POINT NO. 8: The trial court erred in concluding that under the circumstances of this case neither the Commission nor the court was required to make a determination of (a) reasonable operating expenses, (b) present fair value of the property used and useful by the company in the public service or (c) a reasonable net rate of return; POINT NO. 9: The trial court erred in concluding that judicial review of this case should be under the substantial evidence rule; POINT NO. 10: The trial court erred in finding that additional revenues resulting from establishment of a rate in excess of the existing contractual price would merely advance the private interest of High Plains and its stockholders, for there is no evidence to support this finding; POINT NO. 11: The trial court erred in finding that additional revenues resulting from establishment of a rate in excess of the existing contractual price would merely advance the private interest of High Plains and its stockholders, for the great weight and preponderance of the evidence presented in this case is contrary to this finding; POINT NO. 12: The trial court erred in finding that High Plains failed to offer any evidence that the modification of the Contract price by establishment of a rate in excess

road Commission appeals from that portion of the judgment holding that the Commission has jurisdiction over privately negotiated gate rate sales between a municipal corporation which owns its pipeline distribution system and a supplier of gas where a public interest question is presented. The intervenor City of Perryton seeks an affirmance of the trial court's judgment.

The question for our decision is the jurisdiction of the Railroad Commission, if any, between a city and a pipeline company for gas charged the city when there is a contract between the parties.

By agreement, the entire record made before the Railroad Commission was before the trial court, in which complete rate cases were presented by both Appellant and the City of Perryton. Thus the record of the proceedings before the Commission becomes the record of this appellate proceeding together with additional testimony and exhibits admitted in evidence during the trial of the cause.

The trial court made the following conclusions of law:

"1. High Plains Natural Gas Company (hereinafter called 'High Plains') is a gas utility as defined in Article 6050, V. A.C.S. The City of Perryton (hereinafter called 'Perryton') is a municipal corporation governed by general laws applicable thereto.

2. The contract between High Plains and Perryton (hereinafter called 'the Contract') which establishes the city gate price is a valid and enforceable agreement which is binding upon High Plains and Perryton, subject however, to the authority of the Railroad Commission of Texas (hereinafter called 'the Commis-

sion') to review, revise and modify said Contract pursuant to Article 6054, V.A. C.S.

3. Article 6054, V.A.C.S., does not nullify the price provisions contained in contracts between gas utilities and distributing companies or municipalities, but merely authorizes the Commission to review, revise and modify contractual provisions prescribing city gate prices and rates, when the revision of such contractual agreement is required to protect the public interest.

4. After notice, hearing, and compliance with the appropriate statutory and constitutional requirements, the Commission may revise and modify the Contract by establishing and enforcing a city gate rate, less than or in excess of the contractual price, only when the Commission finds it is in the public interest to do so.

5. The Commission's Order, entered on November 26, 1969, denying the application of High Plains was lawful and proper because High Plains failed to prove, by clear and satisfactory evidence, that modification of the Contract was required to protect the public interest.

6. The Commission's Order entered November 26, 1969 did not set a city gate rate for High Plains and Perryton.

7. The Commission was not required to set a city gate rate in cents per Mcf because High Plains wholly failed to introduce any evidence showing that a revision or modification of the Contract was required to protect the public interest.

8. High Plains was not denied procedural due process in Gas Utilities Docket No. 414. The Commission has not

of the Contract price was required to protect the public interest; POINT NO. 13: The trial court erred in finding that High Plains failed to prove that the establishment of a rate in excess of the Contract price was required to protect the public interest, for there is no evidence to support this finding and POINT NO.

14: The trial court erred in finding that High Plains failed to prove that the establishment of a rate in excess of the Contract price was required to protect the public interest, for the great weight and preponderance of the evidence presented in the case is contrary to this finding."

caused High Plains to be deprived of its property without due process of law for the reason that the city gate price of which High Plains now complains as being confiscatory is a contractual price, freely negotiated and established by High Plains and not by the Commission. As to the question of whether such contractual price should be abrogated by the Commission, High Plains was afforded all procedural fairness but failed to establish that the public interest required the abrogation of the Contract existing between High Plains and Perryton.

9. The Commission did not act arbitrarily or capriciously in its consideration of Gas Utilities Docket No. 414 nor in the entry of the Order, and there is substantial evidence to support the Order. Plaintiff failed to prove by clear and satisfactory evidence that the Order complained of is unjust or unreasonable to it.

10. Neither the State of Texas nor its agencies have the constitutional power to modify or abrogate the Contract absent a showing that the public interest requires such modification in view of Article I, Section 10, Clause 1 of the Constitution of the United States, and in this case the Commission could not constitutionally change the rates established in the Contract up or down without a showing before that agency and a determination by it that the public interest required the Contract to be modified.

11. High Plains having failed to establish under all the evidence that the existing contractual price adversely affects the public interest, neither the Commission nor this Court is required to make any determination as to (a) reasonable operating expenses, (b) present fair value of the property used and useful by the company in the public service, or (c) a reasonable net rate of return, and did not, in fact, do so.

12. The Court concludes that the standard of judicial review is the substantial evidence test; the Court further concludes that the Order of the Railroad Commission of Texas entered on November 26, 1969, in Gas Utilities Docket No. 414 was just and reasonable and was supported by substantial evidence. If, however, the standard of judicial review is the preponderance of the evidence test, the Court would make the same conclusions of law as above, and would find the following: * * *"

The crux of Appellant's position is that the Commission is given the directive in Article 6053, Vernon's Civil Statutes to fix "the adequate and reasonable price," and in Article 6054, V.C.S. it is emphasized that the existence of a contract price does not prohibit the Commission from regulating the price of gas. That there is nothing in these statutes which states, directly or indirectly, that the jurisdiction of the Commission to fix an adequate and reasonable price is limited by any condition precedent created by the existence of a contract. That the statutes treat rate cases involving contract prices the same as those not having contract prices.

Article 6050 is in part as follows:

"Every such gas utility is hereby declared to be affected with a public interest and subject to the jurisdiction, control and regulation of the Commission as provided herein."

Appellant is a gas utility within the meaning of Article 6050 and the trial court so found.

Article 6053 is in part as follows:

"Section 1. The Commission after due notice shall fix and establish and enforce the adequate and reasonable price of gas and fair and reasonable rates of charges and regulations for * * * selling, and delivering gas by such pipelines in this State; * * * and establish a fair and equitable division of the proceeds of the sale of gas between the companies transporting or producing the gas and the companies distributing or

selling it; * * * and it shall exercise its power, whether upon its own motion or upon the petition of any person, * * * showing a substantial interest in the subject, * * *."

Article 6054 states in its entirety:

"All orders and agreements of any company or corporation, or any person or persons controlling such pipelines establishing and prescribing prices, rates, rules and regulations and conditions of service, shall be subject to review, revision and regulation by the Commission on hearing after notice as provided for herein to the person, firm, corporation, partnership or joint stock association owning or controlling or operating the gas pipeline affected."

In support of its contention Appellant cites two cases, among others, by this Court: State v. Lone Star Gas Company, 86 S.W.2d 484 (Tex.Civ.App., Austin, 1935, error ref.), State v. Public Service Corporation of Texas, 88 S.W.2d 627 (Tex.Civ. App., Austin, 1935, error ref.).

In *Lone Star*, the Lone Star Gas Company, a transmission company, sold gas at the city gate to several of its affiliates and to two independent distributing companies under a contract price of 40 cents per thousand cubic feet. The Commission acting under the Gas Pipeline Utility Act and particularly Article 6053 held hearings and reduced the price to 32 cents per thousand cubic feet. Appellant argues that the constitutional issue of the impairment of contract clause under both the State and Federal Constitutions was raised by Lone Star and overruled by this Court. Further, Appellant contends that there is nothing in this decision suggesting that the Texas statutes attempt to limit the jurisdiction of the Commission when there is a contract price involved. The *Public Service Corporation* case, above, is cited for substantially the same factual situation and applicable law.

We cannot agree with this contention. In *Lone Star* this Court held that the State may, in the exercise of the police power change franchise and contract rates " * * * in the protection of the inalienable rights and general welfare of its citizens * * *." We held that the Commission has the Constitutional power to prescribe a rate less than the contractual price when it is in the public interest to do so.

The case at bar is strikingly similar to Federal Power Commission v. Sierra Pacific Power Company, decided by the Supreme Court of the United States in 1955, 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388. We quote from the Court's opinion:

" * * * The Commission has undoubted power under Sec. 206(a) (Federal Power Act) to prescribe a change in contract rates whenever it determines such rates to be unlawful. * * *

The condition precedent to the Commission's exercise of its power under § 206(a) is a finding that the existing rate is 'unjust, unreasonable, unduly discriminatory or preferential'. Petitioners contend that the Commission did in fact make such a finding. It was stipulated in the proceedings before the Commission that 5.5% was normally a reasonable rate of return for PG&E's operations, that the contract rate would produce a 2.6% rate of return, and that the proposed rate would produce a 4.75% rate of return. The Commission concluded that the proposed rate was not unreasonably high because it provided no more than a fair return and was not unreasonably low because the 0.75% deficiency of its yield from the stipulated reasonable rate of return was not being made up on other sales and was justified in order to retain business the loss of which by PG&E would result in idle facilities. It also concluded that the proposed rate was not unduly discriminatory or preferential, despite substantial differences between it and the rates being charged other customers. While no further findings were necessary in view of

the Commission's interpretation of the Act as permitting unilateral contract changes, the Commission went on to say:

'However, we may point out that if a finding on the lawfulness of the 1948 contract rate were necessary or appropriate, on the record before us that finding would have to be that the 1948 rate is unreasonably low and therefore unlawful. For none of the evidence in this record warrants a finding that any rate would be reasonable that would produce a return of substantially less than the 4.-75% resulting from the proposed rate, which is the minimum PG&E is willing to accept.'

It is contended that by this statement the Commission in substance found that the existing contract rate was 'unreasonable' and fixed the proposed rate as 'the just and reasonable rate,' thereby satisfying the requirement of § 206(a).

But even accepting this statement as a finding of unreasonableness of the contract rate, the Commission's conclusion appears on its face to be based on an erroneous standard. In short, the Commission holds that the contract rate is unreasonable solely because it yields less than a fair return on the net invested capital. But, while it may be that the Commission may not normally *impose* upon a public utility a rate which would produce less than a fair return, it does not follow that the public utility may not itself agree by contract to a rate affording less than a fair return or that, if it does so, it is entitled to be relieved of its improvident bargain. Cf. Arkansas Natural Gas Company v. Arkansas R. Com., 261 U.S. 379, 43 S.Ct. 387, 67 L.Ed. 705. In such circumstances the sole concern of the Commission would seem to be whether the rate is so low as to adversely affect the public interest—as where it might impair the financial ability of the public utility to continue its service, cast upon other consumers an excessive burden, or be unduly discrimi-

natory. That the purpose of the power given the Commission by § 206(a) is the protection of the public interest, as distinguished from the private interests of the utilities, is evidenced by the recital in § 201 of the Act that the scheme of regulation imposed is 'necessary in the public interest.' When § 206(a) is read in the light of this purpose, it is clear that a contract may not be said to either 'unjust' or 'unreasonable' simply because it is unprofitable to the public utility.

Whether under the facts of this case the contract rate is so low as to have an adverse effect on the public interest is of course a question to be determined in the first instance by the Commission. * * *"

Our Article 6050 declares every gas utility to be affected with a public interest; Article 6053 charges the Commission to fix, establish and enforce the "*adequate and reasonable price of gas* and *fair and reasonable rates of charges* and regulations * * *." (Emphasis added)

In Article 6054 all orders and agreements of pipeline companies are subject to "review, revision and regulation by the Commission."

█ The standard for review of rates under our Natural Gas Act is for all practical purposes identical with the Federal Power Act in the sections quoted above. Consequently we follow the mandate of the United States Supreme Court in its construction. We hold that in order to set the contract aside, the Appellant was charged with the burden of showing that a continuance of the contract would adversely affect the public interest in that it might impair the ability of the pipeline to continue its service, cast upon other consumers an excessive burden or be unduly discriminatory. At this point the contract would become subject to "review, revision and regulation by the Commission." It is not enough that the pipeline made a bad bargain.

This brings us to the evidence and to the test applicable in reviewing the evidence. In its brief, Appellant High Plains states: "The fact that in this case, taking High Plains' exhibits as correct, a small gain (rather than a loss) was produced by the contract price, does not conclude the issue of 'public interest.'" High Plains showed that the contract price yielded a rate of return of only 2.987. This is not only unquestionably far below a *reasonable* rate of return, but it is *confiscatory* under the standard set in the *Alvin* case. The Alvin case referred to is Railroad Commission v. Houston Natural Gas Corporation, 155 Tex. 502, 289 S.W.2d 559 (1956). The *Alvin* case is not in point here as it was a rate case wherein the rate making jurisdiction of the Commission was invoked thus compelling the Commission to set a reasonable rate under the applicable guidelines. The standard applicable there is not the same as here. The case before us is not a rate case. As stated by the United States Supreme Court in United Gas Pipe Line Co. v. Mobile Gas Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1955), a companion case to *Sierra* concerning the right of the Federal Power Commission to change the contract price of gas and the related question of "public interest";

> "The basic power of the Commission is that given it by § 5(a) to set aside and modify any rate or contract which it determines, after hearing, to be 'unjust, unreasonable, unduly discriminatory, or preferential'. This is neither a 'ratemaking' nor a 'rate-changing' procedure. It is simply the power to review rates and contracts made in the first instance by natural gas companies and, if they are determined to be unlawful, to remedy them."

High Plains contends that if its evidence showed that the contract price was producing an unreasonable rate then this would be relevant to the determination of the public interest under any standard. The gist of this argument was propounded by the Commission in *Sierra* and was rejected by the Court.

Countervailing Appellant High Plains' evidence of a small profit amounting to only 2.987% was that of Appellee Perryton. In arriving at this rate base Appellant included Federal income taxes as cost of service which the evidence indicates they had not actually paid. When the hypothetical income tax is deleted, Appellant's evidence reflects that the company received 5.307% return during the test year. Appellee Perryton's evidence further reflects a 16.24% return during the test year on Perryton's fair value rate base of $326,266. Perryton's evidence revealed studies that a rate of 26.49¢ per Mcf would yield a 7.5% return, whereas Appellant High Plains contended that a rate of 43.09¢ per Mcf was required to yield a 7.5% return. The parties stipulated that 7.5% was a reasonable rate of return.

■ Thus it becomes apparent that Appellant has neither alleged in its pleadings nor offered substantial evidence to indicate that the contract rate should be set aside in the public interest. While the evidence may indicate a bad bargain or a rate less than the Commission, were it to have jurisdiction, could lawfully set the public interest test as stated in *Sierra* simply has not been met.

■ As we have already indicated, the substantial evidence rule is applicable to this judicial review of the Commissions' order. The preponderance of the evidence test usually applicable in civil trials does not extend to fact findings of an administrative agency made within the scope of its statutory powers. Thomas v. Stanolind Oil & Gas Company, 145 Tex. 270, 198 S.W.2d 420 (1946). Here the Commission is the fact finding body and the question to be determined by the courts is strictly one of law. Board of Firemen's Relief and Retirement Fund Trustees of Houston v. Marks, 150 Tex. 433, 242 S.W.2d 181 (1951).

The Appellee Railroad Commission has a counterpoint, which we overrule, that the trial court erred in overruling the Commission's special exception asserting that the Commission had no jurisdiction to review the price provisions of the contract entered into between High Plains and Perryton.

The Commission cites and relies on the words from the caption of the Gas Pipeline Utilities Act, "excepting from this Act plants owned by municipalities * * *." Acts 1920, 36th Legis., 3rd C.S., p. 18, Chap. 14. The portion of the Act to which this language of the caption referred is to be found in the last paragraph of Section 1 of the Act as originally enacted:

"Every gas utility as defined in this Act is hereby declared to be affected with a public interest and subject to the jurisdiction, control and regulation of the Commission as provided in this Act, *provided, that the rates and service of any gas utility plant, property, equipment or facilities owned or operated by a municipality shall not be subject to the jurisdiction, regulation or control of the Commission.*" (Emphasis supplied)

This exception, even during its short existence, applied only to sales *by* the municipality—not sales *to* the municipality.

However this exception no longer exists. When the statutes of the Gas Pipeline Utility Act were codified in 1925, the portion of Section 1 underscored above was deleted. Under the Final Title of the Revised Statutes of 1925, Section 2, states, "that all civil statutes of a general nature, in force when the revised statutes take effect and which are not included herein or which are not hereby expressly continued in force, are hereby repealed." While the caption is relevant in matters of statutory interpretation, an Act is to be interpreted in the full light of its title but the title, of itself, has no enacting force, and cannot confer powers not mentioned in the Act.

Red River National Bank v. Ferguson, 109 Tex. 287, 206 S.W. 923 (1918).

The judgment of the trial court is affirmed.