**ALLIED CHEMICAL CORPORATION, et al., Appellants,**

v.

**RAILROAD COMMISSION OF TEXAS, et al., Appellees.**

**No. 13698.**

Court of Appeals of Texas, Austin.

Sept. 7, 1983.

Rehearing Denied Nov. 2, 1983.

John L. McConn, Jr., Butler, Binion, Rice, Cook & Knapp, Robert L. Ketchand, Houston, Butler, Binion, Rice, Cook & Knapp, Washington, D.C., for Allied Chemical Corp.

Paul W. Gertz, Orgain, Bell & Tucker, Beaumont, for Gulf Coast Machine & Supply Co. and Houston Chemical Co., a Div. of PPG Industries, Inc.

Mark White, Atty. Gen., J. Scott Wilson, Asst. Atty. Gen., Austin, for appellees.

Before SHANNON, POWERS and GAMMAGE, JJ.

POWERS, Justice.

We review a district court judgment that affirms a final order entered by the Texas Railroad Commission in an administrative proceeding denominated "Gas Utilities Docket 628" (GUD 628). We reverse the judgment and remand with instructions to the district court for further remand to the Commission.

Allied Chemical Corporation supplies natural gas to Houston Chemical Company and Gulf Coast Machine and Supply Company, at unit prices set by various contracts between them. (Some of the contracts were entered into by a "division" of Allied, "Union Texas Petroleum Company," but we shall hereafter refer to Allied as the contracting party.) Allied obtains natural gas from Lo-Vaca Gathering Company pursuant to a contract between them.

In another Commission proceeding denominated "Gas Utilities Docket 500" (GUD 500), Lo-Vaca petitioned the Commission to review Lo-Vaca's contracts with its customers and reform the contracts by increasing the unit prices set therein for natural gas sold by Lo-Vaca. Pending a final hearing in GUD 500, the Commission entered an interlocutory order setting the higher prices for Lo-Vaca's customers, which included Allied. Tex.Rev.Civ.Stat.Ann. arts. 6053, 6054 (1962).

Initiating GUD 628, Allied requested that the Commission authorize Allied to charge Houston Chemical and Gulf Coast a pro-rata portion of Allied's increased cost of natural gas attributable to the Commission's interlocutory order in GUD 500; which is to say, in the words of the parties to this appeal, Allied sought to "flow through" to Houston Chemical and Gulf Coast the increased cost of the gas, to the extent Allied furnished them natural gas taken from the Lo-Vaca system.

The Commission's final order in GUD 628 authorized the "flow through" but did so in terms unsatisfactory to Allied as well as to Gulf Coast and Houston Chemical. Allied sued in district court for judicial review of the order, as did Gulf Coast and Houston Chemical. The district court consolidated the two suits and entered a single judgment that affirms in all respects the Commission's final order in GUD 628. Allied, Gulf Coast, and Houston Chemical assign numerous points of error in their respective appeals. The Commission, of course, defends on appeal both its final order in GUD 628 and the judgment of the district court.

## THE COMMISSION'S INTERLOCUTORY ORDER IN GUD 500

On March 25, 1973, Lo-Vaca filed in the Commission an application requesting the Commission's review of its contracts to supply natural gas to its customers and a "cost adjustment" with respect to the gas. Allied participated in the subsequent proceedings, denominated by the Commission as GUD 500. Houston Chemical and Gulf Coast are not customers of Lo-Vaca in the ordinary sense but take Lo-Vaca gas to the extent their supplier, Allied, furnishes them gas purchased by Allied from Lo-Vaca. Houston Chemical and Gulf Coast do not appear

on a list, dated May 3, 1973, showing the parties who appeared in GUD 500.

The Commission, on September 27, 1973, pursuant to Lo-Vaca's request, entered an interlocutory order in GUD 500 wherein the Commission found "that a public emergency and imperative public necessity require temporary suspension of the rules of practice and procedure for the Gas Utilities Division in order that temporary rates may be established. . . ." The order then established for Lo-Vaca and its customers, including Allied, a formula by which higher prices were to be charged Lo-Vaca's customers. The order is expressly made "applicable to all customers of Lo-Vaca now paying a lower rate" and provides further:

> [n]othing contained herein is intended to affect the rights and obligations of the parties to this proceeding as between themselves or otherwise, except to the extent of affecting rates during the effective period of this interim rate.

Approximately seven months after the date of the foregoing interlocutory order, the Commission found it necessary to "clarify" the order.

In a letter to an addressee named "Union Texas Transmission Company," dated April 29, 1974 and entitled "In Re Gas Utilities Docket No. 500; Clarification of the Interlocutory Order dated September 27, 1973," the Commission stated:

> The Commission's Interlocutory Order was entered to avert or mitigate human suffering, particularly during the winter heating season, due to the serious shortfall of gas on the Lo-Vaca system. The order was not intended to place the pipeline customers of Lo-Vaca in the same position occupied by Lo-Vaca [sic] prior to September 27, 1973. The ultimate beneficiaries of any improvement in Lo-Vaca's gas supply situation due to the Interlocutory Order are the end-users or ultimate consumers of the gas, and the only fair and equitable means of administering [sic] the additional gas cost is to allocate it among such ultimate consumers or end-users. *Accordingly, direct or indirect pipeline customers of Lo-Vaca should be allowed to flow-through any additional gas cost, incurred by such pipeline customers as a result of the Interlocutory Order. The direct or indirect pipeline customers of Lo-Vaca will allocate the cost of the Lo-Vaca gas among all of its customers benefitting from such gas, and any increased charges to its customers will be subject to Commission review.*

(emphasis added). The genesis of the present dispute lies, of course, in this "clarification" letter, wherein the Commission declared that Lo-Vaca "pipeline customers" such as Allied were to "allocate the cost of the Lo-Vaca gas among all of [their] customers benefitting from such gas," subject to review by the Commission, notwithstanding that the interlocutory order itself purported to be applicable only "to all customers of Lo-Vaca" then paying a rate lower than that derived from the formula established in the interlocutory order, and notwithstanding that at least two of Allied's customers, Houston Chemical and Gulf Coast, were not designated parties in GUD 500.

About a month after the date of the "clarification" letter, Allied commenced and has continued to bill Gulf Coast and Houston Chemical in amounts determined by the unit prices stipulated in their contracts, plus a pro rata part of the increased costs Allied has been required to pay Lo-Vaca under the Commission's interlocutory order in GUD 500.

## THE COMMISSION'S FINAL ORDER IN GUD 628

The proceedings in GUD 628 originated in still another Commission proceeding, denominated "Gas Utilities Docket 495" (GUD 495). In that earlier proceeding, Allied had petitioned the Commission directly to abrogate the natural gas prices stipulated in Allied's contracts with its customers, including Houston Chemical and Gulf Coast, and to establish higher prices for the gas sold under such contracts. On June 16, 1975, the Commission entered its final order in GUD 495. It denied Allied's request for revision of the contract prices, basing its order on the ground that Allied had failed to demon-

strate that a denial of its request would adversely affect the public interest, which the Commission considered to be a prerequisite to any exercise by the Commission of its power to revise contract prices. *High Plains Natural Gas Company v. Railroad Commission of Texas,* 467 S.W.2d 532 (Tex. Civ.App.1971, writ ref'd n.r.e.).

Allied immediately responded to the final order in a letter to the Commission wherein Allied asserted that even if it were not deemed entitled to the direct rate relief requested by it in GUD 495, it was nevertheless entitled, by reason of the Commission's "clarification" letter in GUD 500, to "flow through" to its customers the increased costs authorized by the Commission in favor of Lo-Vaca, to the extent Allied furnished its customers with natural gas purchased from Lo-Vaca. Allied requested, therefore, that the Commission enter "an order in GUD 500, or a supplementary order in GUD 495, clarifying that [Allied] is entitled to flow-through to its customers the increased cost of Lo-Vaca gas." The Commission took neither of the suggested courses of action.

Instead, the Commission on July 11, 1975 issued notice of a hearing, ultimately held on August 27, 1975, in a new administrative proceeding designated by the Commission as "Gas Utilities Docket No. 628" (GUD 628), the agency proceeding under review. About a year after the hearing of August 27, 1975, the Commission on July 13, 1976 issued its final order in GUD 628; however, on motions for rehearing, the Commission reconsidered and on May 9, 1977 issued a revised final order which provided in part as follows:

1. *[Allied] is entitled to collect from its customers in the form of a mandatory supply payment flow-through any increased gas costs over its otherwise existing contract prices with Lo-Vaca Gathering Company which have resulted from the Commission's flow-through orders in Gas Utilities Docket No. 500.* As used herein "customers" includes all customers on or after September 27, 1973.

2. The actual amount to be flowed through shall be calculated on the basis of the difference between the otherwise existing contract price and the Lo-Vaca price to [Allied]. The otherwise existing contract price is the price which would have obtained in the absence of the Commission-ordered mandatory supply payment flow-through.

3. Since the Settlement agreement between Allied Chemical Corporation and Lo-Vaca Gathering Company, dated May 10, 1973, established that the price for gas to be delivered under that agreement would be whatever the Commission determined the Lo-Vaca price to be, that otherwise existing contract price shall be the base line for calculation of the amount of flow-through for gas delivered pursuant to that agreement. That is, since the resulting price under that agreement would be the same as the Commission-determined Lo-Vaca price, the amount of flow-through for deliveries under that agreement is zero (0). In making this ordering provision, as well as in making Finding of Fact number 8, supra, it is not the intent of this Commission to in any way deprive the parties to this proceeding of their right to have a court of this state interpret any contracts or agreements involved in this matter according to the law of this state, and, if necessary to have a court reform these provisions in accordance with such an interpretation.

4. If related issues, such as the method of inclusion of extracted liquids, cannot be resolved by the parties themselves, the amount of flow-through shall be calculated on a per MMBTU of gas purchased from Lo-Vaca basis, subject to the limitations of metering devices measuring sales from [Allied] to its customers. Where metering devices cannot account for BTU fluctuations, the adjustment shall be made

as if each MCF sold, at 14.65 psia, at 60° F, were equal to 1 MMBTU.

5. The amount of flow-through payments to be made should be calculated on the basis of the actual amounts of Lo-Vaca gas delivered to direct and indirect customers. The allocation of Lo-Vaca gas to the various customers of a direct customer should be made on the same basis as it was allocated prior to September, 1973, (assuming no curtailments at that time), and where no specific method of allocation was employed prior to that time, it should be made ratably according to total volumes taken into the particular direct customer's system.

6. The mandatory supply payment flow-through shall apply to all volumes delivered since September 27, 1973.

7. *It is not the intent of the Commission to impair ultimate contract rights existing between any of the parties to this proceeding for any claims or damages arising under the laws of this State. It is not the intention of this Commission that the required mandatory supply payment flow-through be construed as contract rate relief in any form.*

(emphasis added).

The relief ordered by the Commission, as set out above, rests upon seven conclusions of law stated in its final order in GUD 628, including two which read as follows:

3. A mandatory supply payment flow-through as contemplated by the Gas Utilities Docket 500 [interlocutory] order issued September 27, 1973, does not constitute a modification or revision of privately negotiated contracts. There is thus no need to consider the public interest test for revision of such contracts as established by *High Plains Natural Gas Company v. Railroad Commission of Texas*, 467 S.W.2d 532 (Tex.Civ.App.—Austin 1971, writ ref'd n.r.e.).

4. The Railroad Commission of Texas has jurisdiction over the issues in this proceeding. Gas Utilities Docket No. 495 concerned contract rate revision and did not concern the administration of the mandatory supply payment flow-through resulting from the proceedings in Gas Utilities Docket No. 500.

It is obvious from the foregoing provisions, and from the entirety of the Commission's final order in GUD 628, that the agency carefully and specifically distinguished between the revision of contract prices and a "mandatory supply payment flow-through," and that it awarded Allied only the latter relief and not the former. And because the Commission's order did not purport to revise the prices stipulated in Allied's contracts with its customers, but purported only to suspend those prices while leaving unimpaired the customers' residual right to enforce their contract prices, the Commission concluded that there existed no necessity for it to determine whether revision of the contract prices was dictated in the public interest, the prerequisite for such revision under *High Plains*.

### THE COMMISSION'S FINAL ORDER IN GUD 500

While the parties' suits for judicial review of the Commission's final order in GUD 628 were pending in district court, the Commission on September 4, 1979 issued its *final* order in GUD 500, the administrative proceeding wherein Lo-Vaca had requested an upward revision of the prices for natural gas established in its contracts with its customers, including Allied. The Commission's final order in GUD 500 includes findings of fact to the effect that Lo-Vaca did not have sufficient assets or income to comply with the Commission's previous order in GUD 500, insofar as that order had preserved for Lo-Vaca's customers the ultimate right to recover from Lo-Vaca on or for breach of their contract price provisions; that is to say, the Commission found that Lo-Vaca's financial condition was such that its customers could never recover from Lo-Vaca the difference between their contract prices and the higher prices they had been required to pay under the Commission's previ-

ous order in GUD 500. Consequently, the Commission abrogated by its final order in GUD 500 any right of Lo-Vaca's customers to recover against Lo-Vaca.

In addition, the Commission in its final order in GUD 500 noted and expressly adopted as "fair, equitable, feasible, and in the public interest" a "settlement agreement" made by Lo-Vaca on December 26, 1977 with its customers, including Allied. The Commission observed that the settlement agreement provided for certain benefits to accrue to Lo-Vaca's customers, such as (1) the reorganization of Lo-Vaca and other subsidiaries of Coastal States Gas Corporation (Coastal) "into a corporate enterprise totally separate from Coastal"; (2) the transfer of certain assets of Coastal and the new corporation into a "Settlement Trust" to be established for the benefit of Lo-Vaca's customers; (3) expenditures by Coastal to find and develop new natural gas reserves to be offered for sale to the trust at prices below market prices; and (4) the settlement and compromise of all claims arising out of Lo-Vaca's contracts with its natural gas customers.

The Commission's final order in GUD 500 also addressed the relationship between Lo-Vaca's customers, such as Allied, and *their* customers, such as Gulf Coast and Houston Chemical, who were ultimate purchasers of natural gas taken from the Lo-Vaca system. In that regard, the Commission's finding of fact number 24 recites:

> Lo-Vaca [has] customers which are not ultimate consumers of natural gas but purchase gas from Lo-Vaca . . . for resale to others (Resale Customers). The interim rate [has] caused . . . Resale Customers on the Lo-Vaca system to incur previously unanticipated greater costs for Lo-Vaca system gas which they sell to others. We find that these costs, resulting from amounts paid to Lo-Vaca under the interim rate . . ., *should not be borne by those Resale Customers but instead should be flowed through to their customers,* to the extent required or permitted by present or future regulatory provisions or orders to pay just as the Lo-Vaca

system direct use customers must pay the Lo-Vaca system rates.

(emphasis added). Accordingly, the Commission ordered the following relief in favor of Lo-Vaca's direct customers, such as Allied:

> 8. That each customer of Lo-Vaca which purchases natural gas for resale from Lo-Vaca (Lo-Vaca Gas) at the rate established by this Final Order (Resale Customer), or any amended or modified version thereof, is and shall be entitled to, and shall, flow through, charge, collect and retain on a pro rata basis or other basis as the Commission may in future direct from those of its customers which (i) purchase any Lo-Vaca Gas from such Resale Customer or (ii) in the case of customers of a Resale Customer which operates a gas pipeline system, purchase natural gas from such Resale Customer's integrated pipeline system which receives Lo-Vaca Gas . . . (such customers being hereinafter called Secondary Lo-Vaca Customers), *without liability on the part of such Resale Customer to its Secondary Lo-Vaca Customers to refund or in effect to refund (by offset against future collections or retentions or otherwise), to the extent and by the method now or hereinafter required or permitted by Commission action the increased costs attributable to this Order.*

(emphasis added). Thus, the Commission's final order in GUD 500 purports to authorize an upward revision of the contract prices stipulated in the contracts between Lo-Vaca's customers, such as Allied, and *their* customers, such as Gulf Coast and Houston Chemical, who were not designated parties in GUD 500 (although Allied contends they are bound by the orders entered in GUD 500 because of the notoriety of the proceedings and the opportunity such "Secondary Lo-Vaca Customers" had to intervene therein).

It is plain that the apparent effect of the Commission's final order in GUD 500 is to

grant Allied revision of its contracts with Houston Chemical and Gulf Coast, although the Commission had refused to grant somewhat similar relief to Allied in the agency's previous final order in GUD 495, an order sustained in all respects on judicial review. *Union Texas Petroleum v. Railroad Commission of Texas,* 557 S.W.2d 356 (Tex.Civ. App.1977, writ ref'd n.r.e.). (We do not, however, attempt in the present appeal to determine the resulting claim of res judicata made by Gulf Coast and Houston Chemical.) Moreover, the Commission's final order in GUD 500 purports on its face to abrogate any residual right of Gulf Coast and Houston Chemical to recover from Allied the difference between the sums required of them under their contracts with Allied and the greater sums required of them by reason of the Commission's interlocutory order in GUD 500 or its final order in GUD 628—a right previously preserved in them by explicit provisions contained in both orders.

## JUDICIAL REVIEW IN DISTRICT COURT OF THE COMMISSION'S FINAL ORDER IN GUD 628

The consolidated suits for judicial review of the Commission's final order in GUD 628 were tried in district court in December 1981. On Allied's motion, the district court ordered that copies of the Commission's final order in GUD 500 and the "settlement agreement" adopted therein be included in the administrative record compiled by the Commission in GUD 628. In its order, the district court declared the two documents to be "public records of which this Court may take judicial notice." In a separate order, the district court directed as well that the Commission's final order in GUD 495 be included in the administrative record pertaining to GUD 628.

On December 11, 1981, the district court signed its judgment affirming in all respects the Commission's final order in GUD 628, from which Allied, Gulf Coast, and Houston Chemical duly appeal raising various points of error which we shall summarize for a better understanding of the remainder of our opinion.

## SUMMARY OF THE POINTS OF ERROR IN THE PRESENT APPEAL

Gulf Coast and Houston Chemical contend that the Commission, by its final order in GUD 628, abrogates the price provisions contained in their contracts with Allied without a corollary finding that such relief was required in the public interest as defined in *High Plains.* They contend that the contracts were abrogated, despite the fact that the Commission purported to preserve their right ultimately to enforce their contract prices, because they are now precluded from any ultimate recovery against Allied under the doctrine of *Coastal States Gas Producing Company v. Lower Colorado River Authority,* 544 S.W.2d 733 (Tex.Civ. App.1976), writ ref'd n.r.e., 551 S.W.2d 340 (Tex.1977). They further argue that the public interest test cannot be met as to their contracts; that the Commission's final order in GUD 500 is not binding on them because they were not designated parties in that proceeding and were not given sufficient notice to justify binding them to the results as if they were parties; that the district court erred in failing to give res judicata effect to the Commission's final order in GUD 495; that the Commission lacked power to order them to make mandatory supply payments for natural gas delivered to them before initiation of the administrative proceedings in GUD 628; that the Commission's final order in GUD 628 does not provide a method for determining the amounts owed by Gulf Coast and Houston Chemical as mandatory supply payments; and other contentions as well.

Allied raises points of error to the effect that: the Commission exceeded its authority in interpreting Allied's May 1973 settlement contract with Lo-Vaca, which it did in concluding that Allied's contract price for the purpose of "flow through" calculations was the fair and reasonable price determined by the Commission; that the Commission's interpretation of that settlement contract was erroneous in any event; and that the Commission erred in concluding that Allied had not, as a result of the inter-

locutory order in GUD 500, incurred any increased cost for Lo-Vaca gas because Allied had *agreed* to pay the price determined by the Commission, with the result that Allied was not entitled to flow through to Houston Chemical and Gulf Coast for gas purchased under the May 1973 contract any increased costs.

The Commission brings to this Court a cross-point to the effect that the district court erred in attempting to augment the administrative record in GUD 628 by inclusion of documents from GUD 495 and 500, on a theory that the documents were received by the district court in "evidence" in violation of the provisions of APTRA § 19(d)(2). That statute requires that additional evidence be received in the agency, after remand by the district court, when such evidence is material and good reason exists for its not being presented previously in the agency, with a concomitant power in the agency to modify its findings and decision after receiving the additional evidence.

## HOLDINGS AND DISCUSSION

We conclude that we may not decide at the present time all the points of error raised by the parties on appeal to this Court. We may review here the validity of the Commission's final order in GUD 628, and no other.

The relief ordered by the Commission in its final order in GUD 628 rests by its terms upon a single assumption: in ordering Gulf Coast and Houston Chemical to make mandatory supply payments to Allied, the Commission was not revising the prices for natural gas stipulated in the parties' contracts, and the right of Gulf Coast and Houston

Chemical ultimately to enforce those contract prices against Allied was expressly preserved. Accordingly, the Commission declared in its order that no necessity existed for any inquiry as to whether continuance of the contract prices in force would be contrary to the public interest, a finding which the Commission thought was required under *High Plains* if the contract prices were to be abrogated.[1]

Nevertheless, we find in the present record on appeal a copy of the Commission's final order in GUD 500. The facial effect of that order is to require Gulf Coast and Houston Chemical to bear, with respect to Lo-Vaca gas supplied them by Allied, the entirety of Allied's increased cost resulting from the order, and that they do so *without liability* on the part of Allied to refund the "mandatory supply payments" at a later date. The parties do not dispute the authenticity of the copy we find in the appellate record, nor the effect of the order if it is binding on Gulf Coast and Houston Chemical.

Thus, the Commission's final order in GUD 628 rests upon a single condition (ultimate enforcement by Gulf Coast and Houston Chemical of their contracts with Allied) that the Commission has subsequently forbidden to occur by force of its final order in GUD 500.[2] The inference is therefore inescapable that had the Commission considered, in formulating its order in GUD 628, that Houston Chemical and Gulf Coast would never be allowed enforcement of their contract prices against Allied, the Commission would have addressed the issue whether revision of those prices was required in the public interest or it might

---

1. The order expressly relied on this assumption in two other respects: (1) in holding that the relief granted in GUD 628 was not barred by the doctrine of res judicata by virtue of the prior proceedings in GUD 495; (2) in holding that Houston Chemical and Gulf Coast had received sufficient notice of the proceedings in GUD 500 that they could be bound to pay the increased costs for Lo-Vaca gas resulting therefrom.

2. There are two other reasons why ultimate recovery by Gulf Coast and Houston Chemical

on their contracts with Allied appears now to be precluded. First, an action on the contracts is arguably barred by the holding in *Coastal States, supra*. Second, the order in GUD 628 makes recovery of the "mandatory supply payments" by Houston Chemical and Gulf Coast contingent upon a previous recovery from Lo-Vaca by Allied for its increased payments, a recovery now made impossible by reason of their settlement agreement, as well as by the terms of the final order in GUD 500.

have taken, with respect to Allied's request, some other action than that which was taken.[3]

Gulf Coast and Houston Chemical, in their first seven points of error, attack in various ways the failure of the Commission to make the public-interest inquiry required by *High Plains,* both as to the *suspension* of their right to enforce their contract prices against Allied, which is the effect of the final order in GUD 628, and as to the apparent *abrogation* of those prices by reason of the Commission's final order in GUD 500, if that order is effective against them, and by reason of the additional matters stated in footnote two. We sustain these points of error to the limited extent that they point out to us the impropriety of any judicial review at this time in regard to the Commission's final order in GUD 628, reserving our consideration of those points, on their merits, for any future appeal.

■ We reverse the district court's judgment because the single ground upon which the Commission explicitly based its final order in GUD 628 has apparently been destroyed by the agency's subsequent final order in GUD 500. Judicial review of the former order will be fatuous, and our decision thereon meaningless, *if* as a result of the latter order Allied may, without liability on its contracts, require Gulf Coast and Houston Chemical to pay higher prices for natural gas supplied them under those contracts, to the extent the gas is derived from the Lo-Vaca system. We do not know that to be the legal consequence of the Commission's final order in GUD 500 and the validity of that order is not before us for review. Nevertheless, such is the purported effect of the final order in GUD 500.

In GUD 628 as in GUD 500, private rights and obligations derived from contracts are interwoven with the public interest and with technical factors that the Commission alone is competent to evaluate and determine under statutes giving it the power to do so in the first instance. Tex.Rev.Civ. Stat.Ann. arts. 6053, 6054 (1962). In these circumstances, it is obvious to us that the Commission must be afforded an opportunity to reconsider its final order in GUD 628 in light of the fact that its final order in GUD 500 has apparently destroyed the single basis upon which the former order was explicitly founded, and we must defer our judgment until the Commission has acted in that regard.

■ The question arises, however, whether the Commission's final order in GUD 628 must be sustained on a theory that reviewing courts are not bound by the reasons given by administrative agencies in their orders, or by any particular ground made the basis of their decisions, provided there is a valid basis for what they have done in a particular order. *Railroad Commission of Texas v. City of Austin,* 524 S.W.2d 262 (Tex.1975); *Railroad Commission of Texas v. Magnolia Petroleum Co.,* 130 Tex. 484, 109 S.W.2d 967 (1937).

In *City of Austin* and *Magnolia Petroleum Co.,* the issues to be decided by the Court, before determining whether to uphold or reverse the agency order, were issues well-suited and ripe for judicial resolution because they did not require the benefit of the agency's reasoning or expertise. That is not the case in the present appeal where the final order in GUD 628 is undeniably the result of an administrative policy or judgment that the Commission alone is authorized to make under arts. 6053 and 6054, with respect to the proper assignment, allocation, or distribution of the increased cost of Lo-Vaca gas occasioned by the Commission's orders in GUD 500.[4] In such

---

3. There is also a strong implication that the Commission would have held that contract revision was barred by the doctrine of res judicata and that Houston Chemical and Gulf Coast had not received sufficient notice of the GUD 500 proceedings so as to bind them to the orders entered therein.

4. In the Commission's "clarification" of the interlocutory order in GUD 500, the agency permitted the increased cost of Lo-Vaca natural gas, occasioned by the order, to be passed on to the *ultimate consumers* of the gas, on a theory that the order had assured such consumers a continuing supply of natural gas. It is obvious, however, that all such *ultimate consumers* do

cases, and without diminishing the effect of the general rule mentioned above, the validity of the Commission's order in GUD 628 must be judged on the single basis upon which it is explicitly grounded. *Securities and Exchange Commission v. Chenery Corporation,* 318 U.S. 80, 87–88, 92, 63 S.Ct. 454, 459, 461, 87 L.Ed. 626 (1943). That basis is apparently invalid in the present appeal as a result of the Commission's subsequent final order in GUD 500, an order of which we have taken cognizance for the limited purpose of judging the validity of the final order in GUD 628.

In *Big Three Industries, Inc. v. Railroad Commission of Texas,* 618 S.W.2d 543 (Tex. 1981), the Supreme Court of Texas made similar use of the Commission's final order in GUD 500, although it was not included in the administrative record pertaining to the agency order there under review, as that record was brought to the district court. The Court felt itself free to consider the provisions of the final order in GUD 500 on the stated ground that "[t]he Commission specifically incorporated the final order in Docket 500" in the final order entered by the Commission in the proceeding then under review by the Court. It appears from the balance of the Court's opinion, however, that the final order in GUD 500 was not "specifically incorporated" in the order then under review, at least in the ordinary sense,

for the final order in GUD 500 did not come into existence until some months after the Commission's order in the other proceedings. The order in the other proceeding did *refer* to a final order expected to be entered in GUD 500.

In any event, we may not attempt to review the validity of the final order in GUD 628 as if the final order in GUD 500 did not exist.

Accordingly, we reverse the judgment of the district court and remand to that court for further remand to the Commission, accompanied by instructions that the Commission: (1) reconsider its final order in GUD 628 in light of its final order in GUD 500, particularly the provisions therein that apparently deprive Gulf Coast and Houston Chemical of their right to enforce against Allied the prices for natural gas stipulated therein; and (2) entry of a revised final order in GUD 628, supported by sufficient findings of fact and conclusions of law, taking into account any new evidence, policy, or judgments on the part of the Commission that affect the rights of the parties under the contracts in question here.

not occupy identical positions and are consequently not affected in the same manner by the Commission's interlocutory order authorizing a "flow through."

For example, Houston Chemical and Gulf Coast apparently consume the natural gas for the purpose of manufacturing articles sold by them in a competitive market or perhaps at a fixed price under long-term contracts with their customers. Such consumers may or may not be able to pass on these increased costs to the purchasers of these articles. Other "ultimate consumers" utilize the natural gas to generate electricity sold under a system of rates set by governmental bodies or under contracts which permit them to vary the price of the electricity to compensate for any increase in their costs for natural gas. *See Gulf Oil Corp. v. Railroad Commission of Texas,* 660 S.W.2d 112, Tex. App.—Austin 1983. Still others consume the gas for domestic purposes.

The question therefore arises whether the different positions occupied by such "ultimate

consumers," who did not enter into long-term, fixed-price contracts with Lo-Vaca in reliance on Lo-Vaca as a supplier of natural gas, should have a bearing on their obligations to reimburse those who did enter into such contracts for *all* the increased cost of Lo-Vaca gas occasioned by the Commission's interlocutory order in GUD 500. And a question naturally arises as to the justification for allowing those who so contracted with Lo-Vaca, as Allied did, to receive the apparently substantial benefits of the Lo-Vaca settlement agreement adopted by the Commission *and* the right to compel Houston Chemical and Gulf Coast, and other "ultimate consumers," to pay the entirety of the increased cost of Lo-Vaca gas, placing the customers of Lo-Vaca, such as Allied, in the position they would have occupied had Lo-Vaca fulfilled its long-term, fixed-price contracts to supply natural gas to its customers. The Commission may wish to address such questions after remand.