TWC v. City of Fort Worth 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 



ON MOTION FOR REHEARING


 





NO. 3-92-502-CV





TEXAS WATER COMMISSION AND CITY OF ARLINGTON, TEXAS,




 APPELLANTS


vs.





CITY OF FORT WORTH,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 91-11240, HONORABLE JOSEPH H. HART, JUDGE PRESIDING



 





 The opinion issued by this Court on July 7, 1993, is withdrawn and the following
opinion is substituted in lieu thereof. 

 The Texas Water Commission (the "Commission") and the City of Arlington appeal
the district court's judgment reversing a Commission order and remanding the docket to the
agency. The City of Fort Worth brings three crosspoints on appeal asserting the Commission's
order exceeded its statutory jurisdiction. We will affirm the judgment of the district court.



BACKGROUND


 In 1966, Fort Worth and Arlington entered into a contract for a term of thirty-five
years wherein Fort Worth agreed to allow the contents of Arlington's wastewater system to flow
into Fort Worth's wastewater system for transportation to Fort Worth's treatment facility and to
treat the wastewater upon its arrival. The parties agreed that Arlington would pay rates for these
services, which would consist of a treatment facility charge and a transporting facility charge, both
of which were further divided into a rental charge and an operation and maintenance charge. 
While the contract required that the transportation rental charge remain constant, it stipulated that
the other factors were variable and would be reviewed and adjusted over the contract period. (1) For
example, the treatment facility rental charge would be based on the current average construction
cost per million gallons of the capacity of Fort Worth's treatment facility, which would change
over time. Additionally, both operation and maintenance charges would be adjusted to reflect
anticipated trends. (2) The parties do not dispute that Fort Worth retained control over the
calculation of these variable components in Arlington's rate.

 In 1989, Fort Worth sent Arlington notice that its rate for 1989-90 would be 52.4
cents per 1000 gallons of wastewater. The record indicates that the previous year's rate was 46.5
cents per 1000 gallons. Arlington filed a petition with the Commission, claiming that the
proposed rates were unreasonable and discriminatory. One of Arlington's complaints was that
Fort Worth was incorrectly calculating its transportation charges. (3) Fort Worth immediately
objected that the Commission did not have jurisdiction to review the proposed contract rate. After
the examiner initially found the Commission had jurisdiction, Fort Worth agreed along with
Arlington that the contract methodology did not reflect Fort Worth's actual cost of service. 
However, Fort Worth did not abandon its position that the Commission did not have jurisdiction
over Arlington's complaint. Before the examiner, the parties' primary dispute was whether Fort
Worth could charge Arlington for its proportional share of the overall treatment plant flow. The
Commission found that Fort Worth could not include such a component in its cost of service and,
using a cash basis methodology, ordered that the rate should be set at 33 cents per 1000 gallons. 
The Commission concluded that it had jurisdiction over Arlington's petition under section
13.043(f) of the Texas Water Code. Tex. Water Code Ann. § 13.043(f) (West Supp. 1993). It
further concluded that the rates in its order were just and reasonable and not unreasonably
preferential, prejudicial, or discriminatory.

 Fort Worth filed a suit for judicial review in district court under the Administrative
Procedure and Texas Register Act ("APTRA"), Tex. Rev. Civ. Stat. Ann. art. 6252-13a (West
Supp. 1993). The district court found that, although the Commission had jurisdiction to hear
Arlington's appeal of its wastewater rate, it could not modify the contractual rate unless it first
found that such a rate would adversely affect the public interest. The court reversed the
Commission's order and remanded the docket to the Commission.

 The Commission brings three points of error and Arlington brings six points of
error on appeal, attacking the district court's judgment reversing the Commission's order for its
failure to find that the proposed contractual rate adversely affected the public interest. Fort
Worth, in three crosspoints, asserts that the Commission lacks jurisdiction to review contractual
rates between municipalities under any circumstances. 



DISCUSSION


 The Water Code section at issue here provides:



A retail public utility that receives water or sewer service from another retail
public utility or political subdivision of the state may appeal to the commission a
decision of the provider of water or sewer service affecting the amount paid for
water or sewer service.



Tex. Water Code Ann. § 13.043(f) (West Supp. 1993).

 We first address Fort Worth's crosspoint challenging the Commission's jurisdiction
under this statute. Fort Worth contends that the statutory provision empowering the Commission
to review decisions of a provider of water or sewer service does not authorize its review of
contractual rates agreed upon between municipalities.

 The statute does not expressly grant or deny the Commission the authority to
review contractual rates. In fact, the statute does not define "contractual rates" as a particular
type of rate. However, the statute expressly authorizes the Commission to review any decision
of a provider that affects the amount a recipient public utility pays for service. Fort Worth's
calculation of the variable components in Arlington's rate, which resulted in an increase from the
previous year, was clearly a decision affecting rates. The plain language of the statute grants the
Commission jurisdiction over Arlington's petition.

 Fort Worth also asserts that even if the Commission has jurisdiction over wholesale
wastewater rates set by contracts, the Commission cannot alter a rate set by a contract between
two cities, because Section 791.026 of the Texas Government Code (the "Interlocal Cooperation
Act") places such contract rates beyond the Commission's jurisdiction. The Interlocal
Cooperation Act merely allows municipalities to enter into contracts with each other. The
statutory provision that the power to enter into contracts "prevails over a limitation in any other
law" refers to other statutes and charters that might directly prohibit a municipality from signing
contracts and does not preclude later legislative action regarding such a contract. The Water Code
gives the Commission jurisdiction over contractual rates, including contractual rates agreed upon
between municipalities.

 We hold that the district court correctly determined that the Commission had
jurisdiction to review Arlington's petition. However, Fort Worth suggests that if section
13.043(f) authorizes the Commission's review in this docket, then this review unconstitutionally
interferes with its contractual obligations. The Texas Constitution limits the state's ability to pass
laws that impair contractual obligations to instances where the public safety and welfare must be
protected. See Texas State Teachers Ass'n v. State, 711 S.W.2d 421, 423-25 (Tex. App.--Austin
1986, writ ref'd n.r.e.) (construing Tex. Const. art. I, § 16). Before addressing this issue, we
must decide the scope of the Commission's jurisdiction to review rates affected by a providing
municipality's decision. This question is raised by the Commission's and Arlington's second
points of error, challenging the district court's ruling that the Commission was required to find
Fort Worth's proposed rates adversely affected the public interest.

 The Water Code provides:



In an appeal under this section [13.043], the commission shall ensure that every
rate made, demanded, or received by any retail public utility . . . shall be just and
reasonable. Rates shall not be unreasonably preferential, prejudicial, or
discriminatory but shall be sufficient, equitable, and consistent in application to
each class of customers. The commission shall use a methodology that preserves
the financial integrity of the retail public utility.



Tex. Water Code Ann. 13.043(j) (West Supp. 1993). In this docket, the Commission made no
finding as to the reasonableness of rates demanded by Fort Worth, which is the initial inquiry
under section 13.043(j) defining the scope of agency review. The Commission found that the
rates it had calculated under a cash basis methodology were just and reasonable, but it did not
address Fort Worth's contractual rate or why it was unjust, unreasonable, preferential, prejudicial,
or discriminatory, and thus needed modification by the Commission.

 In High Plains Natural Gas Co. v. Railroad Commission, 467 S.W.2d 532 (Tex.
Civ. App.--Austin 1971, writ ref'd n.r.e.), this Court decided the scope of the Railroad
Commission's appellate jurisdiction over gas service contracts between a city and a gas pipeline
company. Id. at 534. The statute in question gave the agency the power to review, revise, and
regulate all orders and agreements of companies that set gas pipeline rates. Tex. Rev. Civ. Stat.
Ann. art. 6054 (West 1962). The statute did not explicitly require the agency to review the
reasonableness of the providing company's rates. Nonetheless, we held that 



in order to set the contract aside, the Appellant was charged with the burden of
showing that a continuance of the contract would adversely affect the public
interest in that it might impair the ability of the pipeline to continue its service, cast
upon other customers an excessive burden or be unduly discriminatory.



Id. at 537. In support of our holding, we relied upon the United States Supreme Court's decision
in Federal Power Commission v Sierra Pacific Power Co., 350 U.S. 348 (1955). There, the
federal statute in question specifically required that before modifying contractual rates the agency
make a finding that existing rates were unjust, unreasonable, unduly discriminatory, or
preferential. Federal Power Act, 16 U.S.C. § 824e(a) (Supp. 1993). The court held that the
Commission's sole concern was whether the contractual rates adversely affected the public
interest. Sierra Pac. Power Co., 350 U.S. at 355. The wording of section 13.043(j) of the Water
Code is similar to that found in the Federal Power Act. Unlike the statute in High Plains, the
provision here expressly requires the Commission to make a finding that the provider city's rates
are unreasonably preferential, prejudicial, or discriminatory before modifying these rates so that
they are just and reasonable. We need not imply such a requirement, as we did in High Plains,
to ensure that the statute does not violate article I, section 16 of the Texas Constitution.

 The district court correctly concluded that the appropriate scope of appellate review
under section 13.043(f) of the Water Code requires that the Commission first make a finding that
the rates affected by a "decision of the provider" adversely affect the public interest by being
unreasonably preferential, prejudicial, or discriminatory. Moreover, the statute does not violate
the constitutional limitation on laws affecting contractual obligations. Texas courts have
reaffirmed the constitutionality of agency review of the reasonableness of contractual rates where
the public interest is affected, as first defined in High Plains. See Crystal City v. Lo-Vaca
Gathering Co., 535 S.W.2d 722, 725 (Tex. Civ. App.--El Paso 1976, writ ref'd n.r.e.); see also
Railroad Comm'n v. City of Austin, 512 S.W.2d 345, 348-49 (Tex. Civ. App.--Austin 1974), rev'd
on other grounds, 524 S.W.2d 262 (Tex. 1975). Fort Worth concedes that Arlington could seek
relief in district court if Fort Worth calculated the contractual rate in an unreasonable manner or
otherwise breached the contract. Here, the statute does not impair any existing contractual
obligation; it merely provides that the Commission may review decisions affecting water and
sewer rates. We overrule Fort Worth's crosspoints concerning jurisdiction and the Commission's
and Arlington's second points of error.

 The Commission's first point of error complains that the district court had no
jurisdiction to reverse the Commission's order on the basis it did because Fort Worth failed to
raise the need for a "public interest" finding in its motion for rehearing, as required by APTRA
§ 16(e). Fort Worth asserted in its motion for rehearing that "the Commission's order also
contains no findings regarding the rates agreed to by Arlington under the Comprehensive
Contract, or that those rates are unjust, unreasonable, unreasonably preferential, prejudicial,
discriminatory, insufficient, inequitable, or inconsistent." The motion further insists that "the
Commission makes no findings . . . that the public interest requires that certain rate provisions
in existing contracts be abrogated." We hold that the motion was sufficiently definite to make the
Commission aware of the error claimed and to allow the agency opportunity to correct the error
or to prepare to defend it. See Suburban Util. Corp. v. Public Util. Comm'n, 652 S.W.2d 358,
364 (Tex. 1983).

 The Commission and Arlington contend that, by its silence during the agency
hearing, Fort Worth waived its right to complain about the Commission's failure to find that the
contractual rate adversely affected the public interest. Arlington further complains that Fort
Worth's pleadings before the agency in support of a cash basis methodology constitute a judicial
admission contrary to its present position on appeal; that Fort Worth's support of a cash basis
methodology has estopped it from arguing in favor of a public interest finding requirement; and
that the Commission's decision to use a cash basis methodology is supported by substantial
evidence.

 Fort Worth made it clear in its initial response to Arlington's petition that it took
the position the Commission had no jurisdiction to modify contractual rates. It continued to object
to the Commission's jurisdiction throughout the agency proceedings, and it only presented its
evidence in support of its requested rate as an alternative position. Section 13.043(j) of the Water
Code clearly indicates that before establishing its own rate, the Commission had to first find that
Fort Worth's rate was unreasonable in some manner. Fort Worth specifically pointed out this
requirement in its motion for rehearing. The statute does not allow the agency to institute a rate
proceeding without a "public interest" finding, even if all parties request that it do so. The
reasonableness requirement is a jurisdictional requirement that cannot be avoided by waiver. We
overrule the Commission's first and fourth points and Arlington's first and third through sixth
points.

 Finally, the Commission contends that the district court erred when it failed to rule
upon several of Fort Worth's complaints in its petition concerning substantial evidence and agency
procedure. Once the court reversed the Commission's order for its failure to make a "public
interest" finding, it properly declined to decide further. We overrule the Commission's third
point.

 We affirm the judgment of the district court.



 

 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: March 2, 1994

Publish
1. Originally, the contract anticipated review and adjustment of the charge rate every five
years. A later amendment to the contract, still effective, allows review and adjustment annually.
2. Again, these anticipated trends were originally over the next five years but are now over just
the following year.
3. Under the contract, Arlington's rates would not include any transportation component if the
wastewater was received by Fort Worth at its plant meter instead of at collector main meters.